DALLAS CONSOLIDATED ELECTRIC STREET RAILWAY COMPANY V.
MRS. KATE MOTWILLER.

No. 1827.    Decided April 29, 1908.

**1.—Damages—Impairment of Earning Capacity.**

Evidence in case of injuries to the person considered and held sufficient
to support a submission to the jury of the issue as to impairment of earn-
ing capacity as an element of damages recoverable.    (Pp. 516–521.)

**2.—Same.**

The question of the sufficiency of evidence to authorize the submission of
the element of damage from impairment of capacity to earn money is
one to be decided on the facts of each case and the practicability of proving the
loss sustained with some degree of exactness, where there is some evidence of
such impairment but evidence to show the amount is lacking or indefinite.    (P.
521.)

**3.—Damages—Injury to the Person—Pleading—Charge.**

An instruction directing the jury to award plaintiff a fair compensation
for physical and mental suffering from an injury caused by defendant's neg-
ligence, was not erroneous in failing to exclude consideration of suffering
proven but not alleged, in the absence of a request for a charge so limiting
the recovery, where the charge given did not affirmatively require consider-
ation of matters not pleaded.    (Pp. 522, 523.)

Questions certified from the Court of Civil Appeals for the Fifth
District, in an appeal from Dallas County.

*Baker, Botts, Parker & Garwood* and *Finley, Knight & Harris,*
for appellant.—In the absence of evidence from which the jury could
properly and intelligently ascertain the amount of loss sustained by
plaintiff by reason of the impairment of her ability to earn money,
it is error for the court to submit this element to the jury; and there
being no evidence in this case from which the jury could intelligently
ascertain the amount of loss sustained by plaintiff by reason of the
impairment of her ability to earn money, the court erred in sub-
mitting such item to the jury as an element of damages for which
recovery could be had.    St. Louis S. W. Ry. v. Smith, 38 Texas
Civ. App., 507; St. Louis S. W. Ry. v. Acker, 99 S. W. Rep., 122;
Houston & T. C. Ry. v. Bird, 48 S. W. Rep., 756; Gulf, C. & S. F.
Ry. v. Mangham, 95 Texas, 419; International & G. N. Ry. v. Sim-
cock, 81 Texas, 503; Houston, E. & W. T. Ry. v. Richards, 20
Texas Civ. App., 203; San Antonio & A. P. Ry. v. Robinson, 73
Texas, 283; San Antonio & A. P. Ry. v. Beam, 50 S. W. Rep., 412;
St. Louis S. W. Ry. v. Laws, 61 S. W. Rep., 499; Christie v. Gal-
veston City Ry., 39 S. W. Rep., 638; Texas & Pac. Ry. v. Bigham,
36 S. W. Rep., 112; Gulf, C. & S. F. Ry. v. Greenlee, 62 Texas, 351;
Galveston, H. & S. A. Ry. v. Cooper, 2 Texas Civ. App., 42; Gal-
veston, H. & S. A. Ry. v. Parish, 43 S. W. Rep., 537; Galveston, H.
& S. A. Ry. v. Smith, 28 S. W. Rep., 112; Davis v. Texas & Pac.
Ry., 42 S. W. Rep., 1008.

Where the evidence shows that plaintiff had sustained certain in-
juries or endured physical pain or mental suffering not alleged in
her petition, it is error for the court to instruct the jury that "If
you find for plaintiff you will find such amount as you may believe

from the evidence will be a fair and just pecuniary compensation for the physical suffering and mental pain, if any, her impaired ability to earn money, if any . . ." without limiting the recovery to the injury and suffering alleged in her petition. City of Dallas v. Jones, 93 Texas, 47.

*W. T. Pace* and *Fitzhugh & Smith,* for appellee.—The pleadings and the evidence raised each of the issues charged upon by the court in the above paragraph. The evidence showed that plaintiff suffered great physical pain, mental suffering and impaired ability to earn money, and the amount incurred for medicine and medical attention. International & G. N. Ry. v. Clark, 96 Texas, 353.

An assignment of error complaining of admission of evidence, or complaining of an omission in the charge of the court, can not be considered on appeal, unless said assignment is based respectively upon objections urged, or special charges requested in the lower court. Western U. T. Co. v. Ward, 19 S. W. Rep., 898; House v. Security Mortgage Co., 38 S. W. Rep., 227; Smythe v. Caswell, 67 Texas, 577; Cotton Jammers Assn. v. Taylor, 56 S. W. Rep., 553.

Under plaintiff's pleadings and evidence the court was warranted in submitting the question to the jury of "Her impaired ability to earn money, if any," and committed no error thereby. Texas & Pac. Ry. v. Bowlin, 32 S. W. Rep., 918; Fordyce v. Withers, 1 Texas Civ. App., 540; Missouri, K. & T. Ry. v. Johnson, 37 S. W. Rep., 775; De La Vergne, Reg. Mch. Co. v. Stahl, 24 Texas Civ. App., 471; St. Louis S. W. Ry. v. Neely, 101 S. W. Rep., 482; Southern K. Ry. v. Sage, 10 Texas Ct. Rep., 277; San Antonio & A. P. Ry. v. Turney, 33 Texas Civ. App., 626; Galveston, H. & S. A. Ry. v. Parrish, 43 S. W. Rep., 537.

Appellant should not now be heard to complain of omissions or commissions, real or supposed, in the charge of the trial court, when such were not called to the attention of the court in its motion for a new trial, and there being no complaint that the judgment was excessive. Houston & T. C. Ry. v. Boozer, 70 Texas, 530; St. Louis S. W. Ry. v. Hall, 20 Texas Ct. Rep., 104; Gulf, C. & S. F. Ry. v. Holland, 27 Texas Civ. App., 397.

Mr. Justice Williams delivered the opinion of the court.

Certified questions from the Court of Civil Appeals for the Fifth District as follows:

"This is an action against the appellant brought by the appellee to recover for personal injuries received by her by being thrown from appellant's street car while attempting to alight therefrom, the allegation being, in effect, that the car on which appellee was traveling stopped at a regular stopping place and while she was attempting to alight the car was negligently started, which caused her to fall and sustain the injuries complained of.

"Defendant plead a general denial and contributory negligence. A trial resulted in a verdict and judgment for plaintiff.

"There is no question raised on this appeal but that the evidence warranted a recovery. The *only* assignment of error attacks one

paragraph of the court's charge, which is as follows: "If you find for the plaintiff you will find such an amount as you believe from the evidence will be a fair and just pecuniary compensation for her physical suffering and mental pain, if any, her impaired ability to earn money, if any, the reasonable amount incurred for medicine and medical attention, if any, made necessary as the direct and proximate result of the defendant's negligence, if any."

"Four propositions are made under this assignment, which may be embraced in two. The first, in effect, is, that the evidence does not state any facts which would enable the jury to reach an intelligent conclusion as to the amount of loss sustained by reason of the impairment of plaintiff's ability to earn money, and the court erred in instructing them upon the measure of damages as to impaired ability to earn money.

"As to impaired ability to earn money the evidence shows that at the time of the accident and several months prior thereto plaintiff was working at a phonograph office as stenographer; that as a result of the accident it was five weeks before she returned to work, and after returning she was not able to work full time, and her ability to perform such work was materially impaired; that it was assumed on the trial that plaintiff was a middle aged woman, and that she had two children. She testified as follows: "I had gotten through work about six o'clock. When I fell I lighted on this side (left side). I was dazed. I stood up with my weight on the other foot. The other foot was a heavy weight hanging to my body. It brought my monthly sickness on, and it was not time for it again. Ever since the accident I have had my monthly sickness every three weeks, and now it is getting less than three weeks apart, and lasts me nearly all the time I have to be prepared for it all the time. On one occasion at the office I left off my pads, and I had on four skirts, with a heavy black skirt, and it came through all of these and got on the cushion I was on, and I handed it to a girl down there and she had to take it out and conceal it. It just comes most any time. Before the accident I was regular. I was considered very healthy. I would walk to my work and walk home, two miles from where I worked. The feeling I had in my leg was pain. It seemed to be heavy and stiff, and is that way now. I never before had a doctor with me, except when my two children were born. I could stand most anything before, but now I have a nervous trembling to my muscles. What flesh I have in my left leg quivers, and the muscles around my mouth quiver. I do not suffer with headache; I hardly ever have a headache. I take the car right at my door and ride to the transfer and it is only a few steps to where I work and that is all the walking I do. I never had any trouble with my kidneys before the accident; now I have to take medicine every time they operate. Sometimes I go two days and there is a fullness in my bladder all the time. I know my leg is shorter now than it was before the accident. I can take a few steps and stop, and get about a short distance by holding to things, and I can not walk more than a few blocks with a cane without stopping and resting and steadying myself. I have almost given up walking at all." On cross examina-

tion she testified: "I work all the time, only I get off early. I have the best people in the world to work for. Yes, sir, during last week I cried in the office. They often ask me there what I am crying about. I cry there often. Yes, sir, I was on the witness stand about two hours last January and I did not cry any then, but, Mr. Harris, my condition is worse. My working hours are eight to six. Sometimes I get there at half past eight. I do pretty much as I please. As a general rule, I do not stay there full time. Some days I have only twelve letters to write. In the store we have cabinets and phonographs all along and I can walk along holding to one cabinet and then go along and hold to another. I always have to hold to something when I walk so as to prevent it from hurting me. Before the accident my standard weight was 140 pounds. In January this year I weighed 105 pounds. I weighed last week and weighed 98 pounds;" that she was confined to her bed fourteen days and returned to work five weeks after the injury.

"W. T. Pace testified: On the 5th of June, last year, when I got home plaintiff was lying on a couch and groaning, her face contorted and hands all cramped up. We got Dr. Poe. Three days after I called in Dr. Smart for consultation and she was in such condition if you touched her, moved or manipulated the parts she would halloa and you could hear her across the street. She remained two weeks confined to her bed. During the night I could hear her groaning. She had something the matter with her hip. I often assisted her in turning over and moving her about the bed, and at those times she would scream out with pain. Her left leg was immovable. I have known her since 1900, intimately, and I have always known her to be a healthy woman before this accident. Her weight was 140 pounds, and she walked to town, a mile and one-half, or two miles, without any complaint. Her face is thin, she has fallen off almost to a skeleton." That she had been working as stenographer for thirteen months at the time of trial began three months before the accident.

"Mr. Newman testified: "Plaintiff could not move her leg. She would scream every time you started to move her. Before the injury she was in good health and walked everywhere she wanted to. Since the accident she has lost a great deal of weight, and is not the same woman at all. She can not get about, even in the house, and suffers all the time. She is physically a different person. I don't believe now she would weigh over 100 pounds. She can not get about, hardly, at all, without a cane, and even catches to the furniture in passing. Her condition is worse than it was at the former trial. Her height is about 5 feet, 6 inches."

"Dr. Poe testified: "I found her wrought up, nervous and suffering injury to her hip joint. On examination I concluded it was an injury to the hip joint and the contiguous tissues thereto. I treated her two weeks. I saw her twice a day most of the time. Dr. Smart made a casual examination. I next saw her at her mother's house. The condition of the hip, and the soreness remained the same. The joint seemed to be limited in its motion, and lasted until the last time I saw her. The last time I examined her I found

a shortening of the limb, about three-fourths of an inch. The acetabulum could be fractured. From the condition of soreness that seemed to be present there might be an injury of that kind in this case. The principal result of an impaction of the femur and acetabulum would be inflammatory action. The motion would be limited, naturally from inflammation. Ankylosis is limited motion and stiffness caused by inflammation. From the hypothetical question you put to me I would attribute the lameness and that condition to some contusion of the tissues' immediately surrounding the joint, or in the joint. Ankylosis would also be the result of such an injury. I would attribute the inflammation of the joints to the soreness and straining of the ligaments. When I was waiting on her she seemed not to have any control over her left limb at all. I took it to be partial paralysis on account of lack of motion in that joint. I would consider, under the same statement of facts, that she would suffer with her spine. It would also cause a derangement of the menses, and I elicited from the patient that she suffered in this respect. If she suffered with her back and kidneys, and in passing her urine, I would attribute that to the fall and the general shock caused to the nervous system. I would attribute the nervousness and hysterical condition to the effect produced upon the nervous system. I saw her today and I think the injury to the joint is permanent. If she weighed 140 pounds and was in good health and received such a fall as you described and now weighs only 98 pounds I would attribute the loss of weight to the general effect of the fall and the pain she suffered, and I think her nervous troubles would be of a lasting nature." On cross examination he testified: "I know nothing of the kidney trouble except the symptoms she gave me. I discovered some swelling down the internal muscles. I was present when Drs. Allen and Duncan made their examination. They did not find her limbs the same length, but a degree of shortening, they found about the same degree I did. I treated her last, about two or three months after the accident, the limb would not move out from its fellow. Part of the neck of the femur might be broken and give inflammatory action and still not affect the bone itself, and Dr. Duncan also examined her and reported a shortening. They made several examinations and reported a shortening. Dr. Allen said there was an infallible way to measure for a shortening and measured that way and found the same amount of shortening to the limb that I did. We all found a shortening. We did not agree that the two limbs were of the same length because when I examined her the day before to my satisfaction and in the examination of the bone itself I found a difference of one-half inch that I could not account for."

"There was no further evidence as to her earning capacity. Plaintiff's allegation as to impaired ability to earn money is that her injuries were permanent, 'rendering her a cripple for life and materially impairs her capacity to earn money at her ordinary occupation, or any other for which she is qualified, during all the balance of her future life.'

"Question 1. Where the evidence shows a general impairment of capacity to earn money, but fails to show what could be earned in

any particular avocation, is it error for the court to charge the impairment of capacity to earn money as an element of damage? Or, in other words, under the foregoing statement was the charge error?

"There seems to be a conflict in the decisions of the Courts of Civil Appeals on this question. See Texas & Pac. Ry. Co. v. Bowlin, 32 S. W. Rep., 918. Contra: Houston & T. C. Ry. Co. v. Bird, 48 S. W. Rep., 756; Missouri, K. & T. Ry. Co. v. Smith, 99 S. W. Rep., 746; St. Louis S. W. Ry. Co. v. Acker, 99 S. W. Rep., 122. But see Railway Co. v. Lacy, 86 Texas, 244.

"The second proposition presented is, that where the evidence shows that plaintiff had sustained certain injuries or endured physical pain or mental suffering, not alleged in her petition, it is error for the court to instruct the jury, as stated in the assignment above quoted, without limiting the recovery to the injuries and suffering alleged in her petition. There was no allegation as to injury to her head, arms or digestive organs.

"Newman, witness for plaintiff, testified on direct examination as follows:

"Q. Did she complain of any suffering in any other part of the body except the hips and limbs? A. Yes, sir; I believe she claimed her head and arms hurt her some, as well as I remember.

"Dr. Moseley testified:

"Q. Did she give you a history of the case? A. Yes, sir; she said she suffered with some irregularity with reference to her kidneys and digestive organs.

"Q. Did she say anything about her kidneys? A. That is what I say; her kidneys and digestive organs were all impaired to a degree.

"At this point Mr. Pace, attorney for plaintiff, said: "He used the words, digestive organs," and we haven't alleged that, and we would like for him to mention the particular organs.

"Q. Mention the particular organs, you say the kidneys? A. Yes, sir; and the female organs.

"There was no objection to this evidence. The evidence on the whole case was such as to warrant the amount of the verdict, irrespective of this evidence, and there is no complaint as to the verdict being too large or excessive.

"Question 2. Was the charge prejudicial to defendant, or was it such as to require a reversal of the case?

"Question 3. The evidence being sufficient to warrant the jury in finding a verdict for $2,806.00, and no assignment complaining of it being excessive, is appellant in a position to claim error in the charge on either ground suggested, even if it be held error in either respect?"

---

It is not clear to our minds that there is any conflict in the decisions referred to by the Court of Civil Appeals. Questions like the first must necessarily be decided upon the facts of each case in which they arise. The question being whether or not there was any evidence authorizing the submission of the element of damage from impairment of capacity to earn money, its decision must depend upon

the evidence in the case in which the charge is given, and if there be anything in the evidence upon which the allowance of any sum, however small, can properly be made for such damage, the objection to the charge is met. There are several elements of damage to be considered in suits for personal injuries. As to some of them, it is practicable to prove the loss sustained with some degree of exactness. Such are doctor's bills, medicines and the like. Of these the law requires such proof. In many cases the value of time lost by the plaintiff may also be so proved, while in some such proof can not be made, as in case of a wife and mother performing the various duties of housekeeper. This is true also of earning capacity and of injury to it. The law only exacts the kind of proof of which the fact to be proved is susceptible, but it does exact that. The earning capacity of the plaintiff in this case, as a stenographer, was probably susceptible of definite proof. If it was otherwise, the facts which made it so should have been shown to have entitled her to have the jury estimate it in their own judgment without fuller proof and to allow full compensation as for a diminution in the amount of her earnings. Nevertheless, if there is evidence to show with sufficient definiteness the loss of any part of that which she would have earned but for her injuries, the submission of that element was justified.

It appears that before she was hurt she could and did walk to and from her work and that since her injuries she has been compelled to ride upon street cars. From their own general knowledge and experience the jury could say that this diminished to some extent the returns from her employment, and we think this evidence was as definite as should be required to show loss of earning power to the extent indicated by it. Evidence is adduced to put the jury in possession of facts from which they can determine the extent of impairment of earning power and is not intended, in itself, to establish a fixed measure of damages. When the jury are informed of such a fact as that just stated they have enough to enable them to allow something upon that score. That they are not so informed as to permit them to allow for the full extent of such loss, is no reason for saying that they can not allow for the part of which they are sufficiently informed.

In answer to the first question it is proper only to say that the charge was not erroneous in submitting the element of damages referred to. As we have stated, all such charges are tested by the state of the pleadings and evidence in the case in which they are given and the evidence must be such as the nature of that case calls for. It is not practicable therefore to lay down a general rule such as is called for by the first part of this question.

The second question is answered in the negative. The charge given referred neither to the pleadings nor the evidence. It contained no intimation to the jury that they were to look to matters in evidence which had not been pleaded. The jury were in no way told either that they could find for injuries not pleaded, or for injuries not proved. The failure to expressly confine their attention to matters both pleaded and proved was therefore a mere omission

which should have been cured, if the defendant desired, by a requested instruction.

In the cases relied on by appellant the charges were so constructed as to contain affirmative misdirections, calculated to cause the jury to base their verdict upon matters proved but not alleged. Besides, the certificate does not make it appear that there was evidence of any *injuries* not alleged. There was no allegation of *injury* to the head, or arms, or digestive organs, but the evidence was of *suffering* in those parts, which, so far as we can know from the certificate, might have resulted from, and have been additional symptoms of, the injuries which were alleged.

An answer to the third question is made unnecessary by the answer to the second.