**DALLAS RY. & TERMINAL CO. v. DARDEN.**
**(No. 3746.)**

Court of Civil Appeals of Texas. Texarkana.
Nov. 30, 1929.

Rehearing Denied Dec. 19, 1929.

740

Worsham, Rollins, Burford, Ryburn & Hincks, of Dallas, for appellant.

Smithdeal, Shook, Spence & Bowyer, of Dallas, for appellee.

HODGES, J. This suit was filed by the appellee against the appellant to recover damages for personal injuries received in a collision between an automobile in which he was riding and one of appellant's cars. Negligence in several respects is charged in the petition, among them (a) the manner in which the car was being operated, and (b) the failure of the motorman to avoid the collision after the appellee's peril had been discovered. According to the testimony of the appellee he was the proprietor of a small drug store situated on Bowen street in the city of Dallas. On the day of his injury he started to deliver some merchandise to a customer. His car was parked almost in front of his store. Before getting into the car he looked in both directions to see if a street car was approaching, but saw none. He then started north in the direction of the place where his goods were to be delivered. In order to avoid a rough and unpaved portion of the street in front of the lot on which his store was situated he drove close to the street car track. While in that position the street car approaching from behind him struck his automobile, causing the injuries for which he sued. He testified: "The right-hand rail of the street-car track from the curb going from town is about 10 feet. The unpaved part of the street there is about—must be close to 6 feet. When I got my right-hand wheel on the paving going the direction I was going that afternoon, that would put the left-hand wheel of the automobile near to the far rail of the street-car track. I know what part of the automobile the street-car struck. It first struck the left rear corner. It broke the left wheel down and it turned around like it was on a pivot; just whirled the car around just square across the tracks and hit it again. Hit it from the side. It knocked it about, I imagine, about 10 feet; square across the track, and then run into it again; * * * The street-car did not stop then. It pushed it down the track about 50 feet. Before the street-car struck the automobile I had moved from the place where the car was standing when I got into it around 50 feet. I did not know the street-car was coming before it struck me. The first I knew there was a street-car on the block was when it hit me."

The appellant pleaded, among other defenses, contributory negligence and unavoidable accident. The court submitted several issues, in answer to which the jury found, in substance, as follows: (1) That defendant's employee operating the street car saw the automobile in which the plaintiff was riding, and realized the danger of a collision with the same in time so that by the exercise of ordinary care on his part to use all the means at his command, consistent with the safety of the street car and the passengers thereon, he could have avoided the collision. (2) That the operator of the street car was guilty of negligence in failing to avoid the collision and in failing to lessen the force of the impact by stopping the street car or lessening its speed, and that this negligence was a proximate cause of appellee's injuries. The jury did not answer issues Nos. 4, 5, and 6, because of the preceding answers. (3) That after the operator of the street car saw that that the plaintiff's automobile was moving he failed to sound his gong or give warning of the approach of the street car, and that such failure was negligence and a proximate cause of the plaintiff's injury. (4) That the street car was being operated at the rate of 25 miles per hour at the time the operator saw the plaintiff's car begin to move, and that the operation of the street car at that rate of speed was negligence and a proximate cause of the injury. (5) That the operator of the street car failed to exercise ordinary care to keep a lookout for the plaintiff, and that such failure was negligence and a proximate cause of appellee's injury. (6) That the operator of the street car failed to have his car under control, and that such failure was negligence and a proximate cause of the plaintiff's injury. (7) That the plaintiff was not guilty of contributory negligence in the several respects charged. (8) That the collision was not the result of an unavoidable accident.

On the measure of damages the court gave the following: "What sum of money, if any, if paid now, do you find would reasonably and fairly compensate the plaintiff for his less-

ened capacity to labor and earn money, if any, up to the present time, and for such lessened capacity, if any, as he may reasonably undergo in the future, if any, as a direct and proximate result of the injuries, if any, sustained in the collision in question on the occasion in question, and would reasonably and fairly compensate the plaintiff for such physical pain, if any, and mental anguish, if any, as he has suffered, if you find and believe that he has suffered any physical pain and mental anguish up to this time, and as he will reasonably and probably suffer in the future, if you find and believe that he will suffer in the future, as a direct and proximate result of the injuries, if any, sustained by him in the collision in question on the occasion in question?"

The jury estimated the plaintiff's aggregate damages at $7,000. Of that sum $80 was remitted, and judgment was entered for $6,920. The appellant contends that the pleadings and the evidence were sufficient to support a finding by the jury that the appellee's earning capacity had been diminished. A special exception to the appellee's petition presenting that objection and a similar objection to the charge on the measure of damages were overruled.

The appellee alleged in his petition that as a result of his injuries he had received a deep cut across his left eye which affected the sight of that eye, and that his vision had been greatly impaired, his spine severely wrenched and bruised, the ligaments of his back torn, and all parts of his body badly bruised; that a pre-existing diseased condition was aggregated so that he is "now suffering from Cerebro-Arteriosclerosis upon which has been superimposed a Psycho-neurosis, hysterical in type; that this psychoneurotic condition is manifest by an extreme nervousness, pain in the back, frequent involuntary jumping movements, and fatigue;" that he suffers from a faulty memory, defective vision, headaches, and dizziness and a severe functional disturbance of his entire central nervous system; that by reason of his injuries his capacity to labor and earn money had been completely destroyed up to that time, "and plaintiff says will be greatly, if not completely, impaired and destroyed for all future time." He testified that he owned a small drug store situated on Bowen street, and waited on his trade himself. In describing his business he stated: "My trade out there was largely a curb trade. Before this injury I waited on it. Since my injury I have not been able to do that like I did before. The effect of my inability to wait on the curb trade is that I have lost my trade. I can't wait on the trade now like I did then. I would jump to the door, jump out and give them quick service, and that is what they liked. Now I have to get out those steps very carefully and slow. The effect on my earn-

ings has been very bad. I had a nice little business before I was injured, and I don't think that I have lost less than $100.00 a month, if not more, since my injuries, by reason of my inability to wait on the trade. I say I don't think it has been less than $100.00 a month, if not more."

Referring to his nervous condition, he said: "It is awful and I can not control it. It jerks me and grips me all over my body. I have absolutely no knowledge that it is coming on until it is over with, or until it is being done. I never can tell. I don't know. It just comes of its own accord. I may have two or three, one right after another; may not have but one. * * * I was absolutely not affected that way before this injury, as far as I can remember I began to be affected that way right away after the injury. * * * It has affected my mind. It is bound to have an effect on anybody's mind. It keeps me worried, worried all the time from it. I just don't know when it is going to come, and I just worry all the time from it."

He further testified that as a result of his injuries his memory was very defective, and that his physical condition seriously interfered with his services in waiting on customers.

The proof shows that the plaintiff was the proprietor of a small drug store, and that he gave his personal services to the conduct of his business in waiting on his customers. He is not here suing for lost profits from his business, but for lost capacity to labor and carry on his business. In a case of this kind, where the injured party is employed in the operation of his own business, his loss of capacity must be determined by the effect of the injuries upon the returns from his business. International & G. N. Ry. Co. v. Cruseturner, 44 Tex. Civ. App. 181, 98 S. W. 423; Texas & P. Ry. Co. v. Crawford, 54 Tex. Civ. App. 196, 117 S. W. 193; Chicago, R. I. & P. Ry. Co. v. Stillwell, 46 Tex. Civ. App. 647, 104 S. W. 1071; Gulf, C. & S. F. Ry. Co. v. Williams (Tex. Civ. App.) 136 S. W. 527; Texas & P. Ry. Co. v. Perkins (Tex. Civ. App.) 284 S. W. 683; Dallas Consolidated Electric Street Railway Co. v. Motwiller, 101 Tex. 515, 109 S. W. 918. If the plaintiff's testimony is true, both his mental and physical ability to conduct his business since the injury have been materially impaired. There was therefore evidence to authorize the jury to find that his power to labor and earn money had been diminished by the injuries. The question then is, Did the evidence show that he had been damaged as a result of that impaired condition? He testified that because of his physical inability to give quick service to his curb customers his trade had fallen off, and estimated his loss from that source at not less than $100 per month. That statement was objected to upon the grounds that it was too remote, and that there was neither pleading

nor testimony to support a finding upon such an issue. We do not think the testimony was subject to the particular objections made. It is insisted, however, by counsel for appellant, that such testimony was incompetent and cannot be relied on to support a finding, even though it was admitted without objection. While plaintiff's estimate of his loss may have been a conclusion of the witness, it was not the ultimate fact to be determined by the jury. Plaintiff's estimate of his loss may or may not have been based upon a comparison made by him of the returns from his business before and after the injury. If the answer was based upon such a comparison, it was clearly admissible. We therefore conclude that the objections made were properly overruled. In the case of Dallas Consolidated Street Railway Co. v. Motwiller, 101 Tex. 515, 109 S. W. 918, 921, the court said: "The question being whether or not there was any evidence authorizing the submission of the element of damage from impairment of capacity to earn money, its decision must depend upon the evidence in the case in which the charge is given, and if there be anything in the evidence upon which the allowance of any sum, however small, can properly be made for such damage, the objection to the charge is met. There are several elements of damage to be considered in suits for personal injuries. As to some of them it is practicable to prove the loss sustained with some degree of exactness. Such are doctor's bills, medicines, and the like. Of these the law requires such proof. In many cases the value of time lost by the plaintiff may also be so proved, while in some such proof cannot be made, as in case of a wife and mother performing the various duties of housekeeper. This is true also of earning capacity and of injury to it. The law only exacts the kind of proof of which the fact to be proved is susceptible, but it does exact that. The earning capacity of the plaintiff in this case as a stenographer was probably susceptible of definite proof. If it was otherwise, the facts which made it so should have been shown to have entitled her to have the jury estimate it in their own judgment without fuller proof, and to allow such compensation as for a diminution in the amount of her earnings. Nevertheless, if there is evidence to show with sufficient definiteness the loss of any part of that which she would have earned but for her injuries, the submission of that element was justified."

The court submitted the issue of unavoidable accident specially as follows: "Do you find and believe from a preponderance of the evidence that the collision in question was the result of an unavoidable accident? In answering the above and foregoing question the burden of proof is upon the defendant to show by a preponderance of the evidence that the collision in question was the result of an unavoidable accident." To which the jury answered, "No." The submission of that issue was objected to by counsel for the appellee upon the ground that the evidence did not call for the submission of unavoidable accident as a special issue in this case. Those objections were overruled. Counsel for the appellant did not object to the submission of the issue, but did object to that portion of it which placed upon appellant the burden of proof. In support of the proposition that the burden was improperly imposed upon it appellant refers to the case of Rosenthal Dry Goods Co. v. Hillebrandt (Tex. Civ. App.) 7 S.W.(2d) 521, 523. In that case Judge Speer, of the Commission of Appeals, said: "We agree with the conclusion of the Court of Civil Appeals that the charge was erroneous in form and subject to the objections timely made by the defendant below. It was indispensable to the plaintiff's case, and the burden was upon her to that extent, to prove that her injuries resulted from the alleged negligence of the defendant. It was not necessary that the defendant plead specially that the injuries were the result of an unavoidable accident. This was put in issue by the general denial and imposed upon the plaintiff the necessity of proving that the happening was not an unavoidable accident. This necessarily was a part of her case. While this requires the proving of a negative, nevertheless it is in keeping with sound reasoning. 'Whenever the establishment of an affirmative case requires proof of a material negative allegation, the party who makes such allegation has the burden of proving it, especially where the most appropriate mode of proof is by establishing the affirmative opposite of the allegation.' "

█ Counsel for appellee contend that, even if there was error in thus placing upon appellant the burden of proving that the collision did not result from an unavoidable accident, that error does not, in view of other findings of the jury, require a reversal of the judgment. We are inclined to agree with that contention. As stated in the excerpt above quoted, that defense was raised by a general denial of the charge that the collision and the injury resulted from the negligence of the defendant. The jury found that the collision and the injury were the proximate result of the appellant's negligence in several respects. The jury specially found that appellant's motorman could, by the exercise of the proper degree of care, have avoided the collision and was negligent in not so doing. Those findings clearly evidence a conclusion on the part of the jury that the collision was the result of an *avoidable* accident. Certainly it cannot be assumed that the jury would have found directly to the contrary had that issue been separately submitted in proper form. Hines v. Arrant (Tex. Civ. App.) 225 S. W. 767. In this case the plaintiff discharged the bur-

den imposed by law when he proved to the satisfaction of the jury, or at least by a preponderance of the evidence, that his injuries resulted from the negligence of the appellant's employee who was operating the street car. Under the record before us we think the error complained of should be treated as harmless.

It is also contended that the answers of the jury are conflicting. In answer to the first question the jury found that the operator of the street car saw the plaintiff's peril in time to avoid the collision by the exercise of the proper degree of care. In answer to another group of questions the jury found that the operator of the street car failed to keep a lookout for the plaintiff; that such failure was negligence and a proximate cause of the collision. The effect of the first answer was to say that the operator of the street car discovered the plaintiff's perilous situation in time to avert the collision. The effect of the other answers was to say that he negligently failed to discover the presence of the plaintiff's car in time to avert the injury. If the motorman saw the plaintiff's car in time to avoid a collision, evidently he kept a lookout. If he failed to keep a lookout, he could not have seen the plaintiff's car within the time implied in the first answer. Liability based upon discovered peril requires proof of an actual discovery of the injured party; while liability upon the ground of failure to keep a lookout depends upon proof that no discovery had been made. The two findings are, we think, irreconcilable. But in view of other special findings, and the holding of the Commission of Appeals in the case of Inman v. St. Louis Southwestern R. Co. of Texas, 288 S. W. 150, which was approved by the Supreme Court, we are not disposed to reverse the judgment upon this ground.

The remaining assignments have been considered and are overruled, because we have failed to find in them any reversible error.

The judgment is affirmed.

### On Motion for a Rehearing.

The language of the original opinion disposing of appellant's assignments attacking the court's charge on the issue of unavoidable accident leaves room for an inference that this charge was held to be harmless solely on the ground of the findings of the jury on other issues. We thought then and think now that the manner in which the court submitted the issue of accident, while erroneous, was harmless, because that issue was not raised by the evidence. The testimony as to how the collision occurred was very definite, and clearly showed that the resulting injury was due either to the negligence of the motorman in charge of the street car, or to the plaintiff in driving his automobile on the track in front of the street car. There was no support in the evidence for the conclusion that the collision occurred without fault of either party. The submission of that issue was objected to by the appellee upon the grounds here stated, and that objection should have been sustained. We therefore conclude that the judgment should not be reversed for the erroneous submission of an issue not raised by the evidence.

The motion for a rehearing is overruled.