J. L. JOHNSON et al., Appellants,

v.

J. B. CLAIBORNE et ux., Appellees.

No. 3470.

Court of Civil Appeals of Texas.

Eastland.

Oct. 2, 1959.

Rehearing Denied Oct. 30, 1959.

Cade & Bowlin, Crenshaw, Dupree & Milam, Lubbock, for appellants.

Rountree, Renner & Snell, Karl Cayton, Lamesa, for appellees.

WALTER, Justice.

J. B. Claiborne and wife, Jessie Mae Claiborne, filed suit against J. L. Johnson, Pruitt Jones, Stanley R. Ranch and Hank Hebert for personal injuries and property damage resulting from a collision between the Claiborne automobile and a truck owned by Ranch and operated by Jones. Based on a favorable verdict, judgment was entered for the Claibornes for $32,-871.41 against all defendants. The judgment awards Ranch and Hebert judgment over against the defendants J. L. Johnson and Pruitt Jones.

Johnson and Jones have appealed, contending the court erred (1) in submitting Mrs. Claiborne's loss of earning capacity to the date of trial, because same was not raised by sufficient evidence and (2) in submitting her diminished capacity to work and earn money in the future and (3) in submitting Mr. Claiborne's loss of earning capacity to the date of the trial and loss of earning capacity in the future, because there was no evidence to support them. They also contend that J. B. Claiborne was guilty of failure to keep a proper lookout

which was a proximate cause of the collision as a matter of law, and that the finding that Mr. Claiborne did not fail to keep a proper lookout is so contrary to the evidence as to be clearly wrong and unjust, and that the court erred in rendering judgment for Ranch and Hebert over against Johnson for the reason that such fact issue was not submitted to the jury.

Ranch and Hebert have appealed, contending that the court erred in holding that the negligence of an independent contractor and his employee was imputable to Hebert and Ranch and in refusing to hold that Claiborne was guilty of contributory negligence in failing to keep a proper lookout, as a matter of law.

The collision occurred on U. S. Highway 87 about one and a half miles from the city limits of Lamesa. Jones was an employee of Johnson who owned a service station located on the east side of the highway. Around midnight Hebert drove a truck owned by Ranch into the station and requested that it be serviced while he rested in the bunk house provided by the station. After Jones had serviced the truck, he backed it onto the highway and had stopped and moved forward about a foot or two when the left rear of the trailer was struck by the Claiborne's automobile. Pruitt Jones testified he was trying to move the truck as quickly as possible in order to make room for two other trucks when he backed it onto the highway. There was ample evidence to establish the negligence of Jones.

It was conclusively established that Mrs. Claiborne was in good health before the wreck and that she sustained serious permanent injuries as a result of the collision. She had a concussion, broken collarbone, ten ribs fractured, a punctured lung and a broken pelvis, and her eyes underneath the lids were covered with slivers of glass. Mrs. Claiborne was in the hospital at Lamesa two weeks and in a Lubbock hospital two weeks. When asked if Mrs. Claiborne would be in need of medical attention for any period of time or for the rest of her life, the doctor said she would need medical attention until she got tired of going to a doctor and that it could be for the rest of her life. She has constant pain in the neck and the right side of her spine, headaches, dizziness, which "feels as if I had some pressure in my head or something of that sort, and I don't know how to explain it. It is always there." Mrs. Claiborne was 44 years of age at the time of the accident and a housewife, with a life expectancy of 26.1 years. In prior years she had done some bookkeeping. The appellants, Johnson and Jones, in their brief assert, "We point out that it was clearly established that Mrs. Jessie Mae Claiborne did sustain disability and that this disability, of a physical nature, would extend into the future".

It was conclusively established that Mr. Claiborne was in good health before the accident. Dr. Price testified that Mr. Claiborne sustained a very severe bruise on his right hip with residual bursitis and that in all reasonable probability he will continue to have some bursitis the rest of his life; that the cramping that Mr. Claiborne has in his legs at night was the result of his bursitis; that Mr. Claiborne had considerable back pain and chest pain for some time after the accident and that he had cuts over his temple and a bruise over his eye and was confined to the hospital for about a week. Mr. Claiborne testified that he was fifty years old, lived in Lamesa, and operated the Piggly-Wiggly stores there and at Hamlin and at Welch; that he had been managing and supervising and coordinating the work between all these stores and in operating these stores did a great deal of heavy work, such as, unloading trucks, stacking merchandise and cases; but, since the accident he had been unable to do any lifting. He was away from the stores six weeks. He testified that $12,000 a year would be a reasonable wage for a person performing the duties he did and that his activities had been reduced 50% as a result of the accident.

He testified that he and his wife were returning from a trip to Abilene at about midnight on August 24, 1957, and that he was operating his automobile going north at about fifty or fifty-five miles per hour when he met a car, and its lights were bright, and at about the instant he met this oncoming car, the truck that he collided with "loomed up in front of me in the highway". He testified that he was wide awake, alert and was driving his automobile on the right side of the highway; that the truck and van were directly across the highway in front of him. He testified that he immediately applied his brakes and pulled to the left in an effort to miss the truck. Buddie Hurtenberger, a highway patrolman, testified that he measured the skid marks of the Claiborne vehicle and that it laid down sixty-three feet of skid marks, and that at the time of the collision the rear duals of the truck were on the highway.

In submitting the damage issue of Mrs. Claiborne, the court inquired what sum of money would compensate her for (1) her diminished capacity to work and earn money in the past and in the future and (2) for her pain and suffering in the past and in the future. The court, in connection with said damage issue, informed the jury that they could take into account the diminished capacity of Mrs. Claiborne to perform her household duties in the past and in the future and also her physical pain in the past and in the future, and her mental anguish in the past and in the future and her loss of earning capacity in the past and in the future. The jury's answer to this issue was $16,000. No complaint is made that the jury's award is excessive and no point is made about the jury considering physical pain and mental anguish. Mrs. Claiborne did not seek special damages but sought to recover damages for her diminished capacity generally as a housewife or in any vocation. The evidence shows a general impairment of her capacity to earn money in any business, trade or occupation, but the evidence does not show in dollars and cents her loss of earnings in any par-ticular trade, business, or occupation. Our Supreme Court in Dallas Consolidated Electric St. Ry. Co. v. Motwiller, 101 Tex. 515, 109 S.W. 918, in answering a certified question, in effect, held that it was not erroneous to submit impairment of capacity to earn money as an element of damages where the evidence shows a general impairment. The evidence reveals that Mrs. Claiborne's capacity to do her housework or work in any business, trade or occupation was diminished by reason of her injuries. In submitting loss of earning capacity in the past and in the future of Mr. Claiborne the court also permitted the jury to consider his physical pain and mental anguish. The jury awarded Mr. Claiborne $7,000. No complaint is made that the jury's answer to this issue is excessive and no point is made about the jury considering physical pain and mental anguish. We hold that under the facts the court was not in error in permitting the jury to take into consideration diminished earning capacity in the past and in the future. McIver v. Gloria, Tex.Civ.App., 163 S.W.2d 890, affirmed 140 Tex. 566, 169 S.W.2d 710; Triangle Cab Co. v. Taylor, Tex.Civ.App., 190 S.W.2d 755, affirmed 144 Tex. 568, 192 S.W.2d 143; McAdams v. Starnes, Tex.Civ.App., 279 S.W.2d 890 (Ref. N.R.E.). The jury's answers to the damage issues for both Mr. and Mrs. Claiborne were not excessive to compensate them for pain and suffering which were properly submitted and without objection.

We find no merit in appellants' points that Mr. Claiborne as a matter of law failed to keep a proper lookout which was a proximate cause of the collision. Our Supreme Court in Re King's Estate, 150 Tex. 662, 244 S.W.2d 660, has set forth the duties of the courts of civil appeals in exercising their constitutional powers in passing on great weight and preponderance of the evidence points. We have followed the principles of law set forth in Re King's Estate and have concluded there is no merit in the point of appellants Johnson and Jones that "The trial court erred in overruling

these appellants' amended motion for new trial on the ground that the verdict of the jury, finding that J. B. Claiborne did not fail to keep a proper lookout, is so contrary to the evidence as to be clearly wrong and unjust." We have examined all of the points of appellants Johnson and Jones and find no merit in them and they are overruled.

 We find no evidence that will support a judgment against Ranch and Hebert. Johnson testified he owned and operated the Triangle Service Station and catered to the truck trade; that a part of the service which his station rendered to all its customers was for the attendant to move and park the trucks after they were serviced.

When Jones was asked what the truck driver told him when he came in the station, he said, "He told me to service his truck, and he was going up to the bunk to sleep for one hour. To service it and move it out of the way when I got through, and wake him up in an hour". Jones further testified that he understood by the term "move it out of the way" to mean to leave the driveway open.

Hebert testified that he drove the truck into the station on the outside lane to the diesel pump and told Jones to service it and that he was going to clean up and take a nap and after the truck had been serviced, "if it got in the way, to pull it out of the way".

We find the relationship of employer and independent contractor resulting from the acts and conducts and words spoken by Hebert and Jones. Lollis v. Humble Oil & Refining Co., Tex.Civ.App., 285 S.W.2d 249.

"An independent contractor is a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking." Carter Publications v. Davis, Tex.

Civ.App., 68 S.W.2d 640, 642. The above definition is substantially in accord with a number of cases referred to in the Carter Publications case. Hebert employed Jones to service the truck. He released the right of control over the details of the work to be done and the means by which it was to be accomplished and was concerned only with the result.

The judgment is reversed insofar as it is against Stanley R. Ranch and Hank Hebert and judgment is here rendered that the appellees take nothing against Ranch and Hebert. In all other respects the judgment is affirmed.