**MEMBERS MUTUAL INSURANCE COM-
PANY, Appellant,**

v.

**Earl MARTIN, Appellee.**

**No. 18239.**

Court of Civil Appeals of Texas,
Dallas.

Jan. 10, 1974.

Rehearing Denied Jan. 10, 1974.

Michael H. Sebastian, Law Office of Pat McClung, Dallas, for appellant.

Bertran T. Bader, III, Bader, Wilson, Menaker, Cox & Branson, Dallas, for appellee.

BATEMAN, Justice.

This is an uninsured motorist case. Earl Martin sustained bodily injuries in an automobile collision and sued appellant, his own liability insurer, for his damages alleging that the driver of the other car was uninsured. All issues were stipulated except the amount of damages which was submitted to the jury in one special issue with five parts. The insurer appeals from the judgment awarding the damages as found by the jury as follows:

a. Physical pain and mental anguish in the past ........................... $1,500.
b. Physical pain and mental anguish which, in reasonable probability, he will suffer in the future ................ $2,000.
c. Loss of earnings in the past ........ $2,475.
d. Loss of earning capacity which, in reasonable probability, he will sustain in the future ..................... $2,000.
e. Reasonable expenses of his necessary medical care in the past ......... $ 542.

Appellant complains only of the third and fourth items listed above, and in its first eight points of error on appeal contends that there was no evidence, and insufficient evidence, to support either the submission of those two issues or the findings thereon.

As to the loss of earnings in the past, appellant points out that Martin had testified that he lost only eighteen days of work at his regular office job, amounting to only $518.28. Martin testified that prior to the accident of April 3, 1969 he had earned five or six hundred dollars a year painting houses in his spare time, but had been unable to do this kind of work since the accident because of dizziness when he looked up. Appellant replies to this contention by arguing that there was no competent evidence of a causal connection between the injuries received in the collision and the complained of dizziness.

■ Dr. Hunter was Martin's personal physician and examined him for the injuries received in this accident, beginning on April 10, 1969. His records of the several examinations are in evidence and show that on April 10, 1969 Martin was "a little dizzy when lies down or gets up," and is "sometimes dizzy when moves head to right." Dr. Hunter prescribed medicine to be taken from two to three times a day for this dizziness. In his deposition Dr. Hunter testified that in his opinion the accident would reasonably account for the injuries found by him upon the said initial examination. He examined Martin again a year later, in April 1970, and found that he was still dizzy when he looked up, and that Martin told him that since the accident of April 3, 1969 he had had a feeling of dizziness when he looked upward, and also occasionally when he gets out of a chair. In February 1971 Dr. Hunter examined him again and found that he still had some dizziness when he looks up as far as he can and also occasionally when he first gets out of bed in the morning; also that the base of his neck stays a little sore all of the time. Dr. Hunter checked him again in April 1972, when Martin continued to complain of dizziness if he turns his head to look up, also of occasional pains in the center of his neck below the skull in the back, and that he could not turn his head to the right as far as he could to the left, and stated that he had quit his part-time house painting because he got dizzy on the ladder when he looked up.

■ Thus there was competent medical evidence of a causal connection between the accident and the dizziness. In the four years between the date of the accident and the time of trial, at five or six hundred

dollars a year this loss of extra earnings could have amounted to from $2,000 to $2,400, and when this is taken into consideration in addition to the value of the eighteen days lost at his regular job it would in our opinion justify the finding of $2,475 as loss of earnings in the past, which the jury found in answer to special issue 1(c).

The jury also found, in answer to special issue 1(d) that Martin would in reasonable probability sustain a loss of earning capacity in the future amounting to $2,000. In most cases it is of course impossible for anyone to say with definiteness and certainty what loss of earnings the plaintiff will sustain in the future. It would be impossible for plaintiff to prove exactly how long his dizziness would continue to plague him and prevent him from painting houses, or how much money he would actually lose after the trial; and yet, in many cases it is apparent that such a loss will be sustained and the law does not turn the claimant away empty-handed merely because he is unable to prove with exactitude or certainty the amount of his loss.

As said in McIver v. Gloria, 140 Tex. 566, 169 S.W.2d 710, 712 (1943):

In a personal injury suit the amount which the plaintiff might have earned in the future is always uncertain, and must be left largely to the sound judgment and discretion of the jury. However, the verdict must be based on something more than mere conjecture. It must be an intelligent judgment, based upon such facts as are available. Even where the injury is of such a serious and permanent nature that loss of earning capacity is the necessary result, proof is required to show the extent and amount of the damages. * * * Where there is an absence of any evidence from which the jury could properly ascertain the plaintiff's future incapacity and loss of earnings, then such finding of the jury would not support a judgment based thereon, and courts would not permit such judgment to stand. Plaintiff, however, is not

required to prove the exact amount, but only the facts from which the jury, in the exercise of sound judgment and discretion, can determine the proper amount.

■ The testimony of Martin, his wife and Dr. Hunter showed that even at the time of trial, four years after the accident, Martin still suffered some pain in the back of his neck and the dizziness when he looked up. It is true that no one expressed an opinion as to how long after the time of trial this condition would continue, but the testimony of those witnesses was sufficient to warrant submitting the question to the jury who, in the exercise of sound judgment and discretion, and utilizing their own experience and knowledge, could determine an amount that would be fair and reasonable.

As said in Dallas Consolidated Electric St. Ry. Co. v. Motwiller, 101 Tex. 515, 109 S.W. 918, 921 (1908):

The law only exacts the kind of proof of which the fact to be proved is susceptible, but it does exact that.

* * * * * *

From their own general knowledge and experience the jury could say that this [evidence that the plaintiff could no longer walk to work, as she had done prior to the accident] diminished to some extent the returns from her employment, and we think this evidence was as definite as should be required to show loss of earning power * * * and is not intended in itself to establish a fixed measure of damages.

In Yellow Cab & Baggage Co. v. Green, 268 S.W.2d 519, 526 (Tex.Civ.App.—Fort Worth 1954, aff'd 154 Tex. 330, 277 S.W. 2d 92), it was said:

And even though the evidence adduced all be to the effect that the injured person will in the opinion of everyone be fully recovered within four months, yet the determination of whether this is true is a matter peculiarly within the prov-

**606**

ince of the jury and theirs is the right to reach a conclusion by blending all the evidence admitted before them, aided by their own experience and knowledge of the subject of inquiry which they have the right to apply, and to deduce therefrom the truth as they may believe it to be.

See also the following language from Triangle Cab Co. v. Taylor, 190 S.W.2d 755, 759 (Tex.Civ.App.—El Paso 1946, aff'd 144 Tex. 568, 192 S.W.2d 143), which we think is applicable here:

> Here there is no evidence to show the extent and amount of appellee's loss of earning capacity in his particular business or profession, but the nature of his injuries is such as to show a diminished earning capacity generally—in any business or profession. This constitutes a sufficient showing to meet the objection to the charge.

By its ninth and last point of error appellant complains of the action of the trial court in denying its request to examine Martin on *voir dire* during the direct examination of Martin by his attorney in which the attorney was attempting to have Martin identify photographs which were to be introduced in evidence, thus depriving appellant of information on which to frame objections to the admissibility of such photographs.

This point is overruled for three reasons: (1) no bill of exception appears in the record showing what Martin would have testified to on *voir dire*, and no request was made for the jury to be sent out while such a bill of exception was made; (2) appellant makes no showing that the information it hoped to elicit on *voir dire* examination could not be satisfactorily obtained on cross-examination; and (3) no harm was shown to have been suffered by appellant by this ruling of the court. Tex.R.Civ.P. 434.

For the reasons hereinabove given, we affirm the judgment of the trial court.