William Howard STONER, Appellant,

v.

Willa HUDGINS, Appellee.

No. 17968.

Court of Civil Appeals of Texas, Fort Worth.

June 22, 1978.

Rehearing Denied July 27, 1978.

Seay, Gwinn, Crawford, Mebus & Blakeney and Charles L. Perry, Dallas, for appellant.

Gray, Whitten & Loveless and John L. Sullivan, Denton, for appellee.

## OPINION ON MOTION FOR REHEARING

MASSEY, Chief Justice.

Our prior opinion in this case, under date of May 25, 1978, is withdrawn, with the following substituted therefor.

In this case Willa Hudgins, plaintiff, recovered a judgment based upon jury verdict for personal injuries and property damage resulting from a collision with an automobile driven by defendant Stoner at a signal-light controlled intersection in the City of Denton. Stoner appealed.

Judgment reversed, with the cause remanded for another trial.

There was no error in the verdict whereby there were jury findings supporting an award of 80% of Mrs. Hudgins' damages against Mr. Stoner by the judgment. We forego description of the manner in which there was the collision of vehicles driven by the respective parties.

In major part there was no error in the remainder of the verdict. However, we have concluded that there was error as applied to certain elements of damages found by the jury which were an integral part of the totality of the award by judgment.

We copy the entire special issue of which the elements aforementioned comprised a part, with the answers returned by the jury written in:

"SPECIAL ISSUE NO. 19:

"What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence would fairly and reasonably compensate WILLA HUDGINS for her injuries, if any, which you find from a preponderance of the evidence resulted from the occurrence in question?

"Do not include any amount for any condition existing before the occurrence in question, except to the extent, if any, that you find from a preponderance of the evi-

dence that such other condition, if any, was aggravated by the injuries, if any, which resulted from the occurrence in question.

"Answer separately in dollars and cents, if any, with respect to each of the following elements:

"a) Physical pain and mental anguish in the past.

"ANSWER: $10,000.00

"b) Physical pain and mental anguish which, in reasonable probability, she will suffer in the future.

"ANSWER: $10,000.00

"c) Loss of her earning capacity in the past.

"ANSWER: $3000.00

"d) Loss of earning capacity which, in reasonable probability she will sustain in the future.

"ANSWER: $10,000.00

"e) Loss of her capacity to perform household maintenance services in the past.

"ANSWER: $0.00

"f) Loss of her capacity to perform household maintenance services which in reasonable probability she will sustain in the future.

"ANSWER: $5000.00"

Attention is directed to the answers to Sections (c) and (d) of Special Issue 19. The evidence relative to the questions will be later discussed, but these are the answers which, by the evidence, we hold to be without support and to have been answered under the court's instructions by "no evidence". Such answers are but a part of the findings upon the ultimate finding—by addition of the elements of damages—of the total of Mrs. Hudgins' damages. What resulted was what is better described as an "insufficiency of evidence" to support the total of the personal injury damages found than is connoted by the more common expression "so contrary to the greater weight and preponderance of the evidence as to be clearly erroneous".

The answers to Sections (c) and (d) are segregable from the remainder of the ver-

dict and do not taint the other jury findings. There would be an affirmable judgment if there had been no inquiry upon "earning capacity" because an error in application of credits, later discussed, could be cured by recomputation. Yet the judgment rendered on these and all the other jury findings must be reversed because they are part of the verdict upon the whole of which the court founded judgment and they could not be segregated so that there might be remand for retrial apart from the other damages elements. Furthermore, there is no doubt that Mrs. Hudgins sustained damages because of some loss of earning capacity; it was the amount of the loss which was not calculable because of the absence of evidence. The evidence was not fully developed.

■ We have concluded that because of the "insufficiency" in the evidence to support the total of the personal injury damages, coupled with the court's instructions under an erroneous theory of law that the jury should make findings on the elements of damages made the subject of Sections (c) and (d), on which there was "no evidence", the judgment must be reversed.

The supreme court in the case of *Bonney v. San Antonio Transit Company*, 160 Tex. 11, 325 S.W.2d 117, 121 (1959), sets forth in clear language rules applicable to cases involving impairment of earning capacity, as follows:

"The point at issue here is the absence of any evidence which would indicate either the amount of Bonney's earnings or a monetary measure of his earning capacity prior to the injury. The rule in this jurisdiction is that where a plaintiff seeks damages for impairment of earning capacity, he must prove the amount of such damages with the degree of certainty to which it is susceptible. *Dallas Consolidated Electric Street Railway Co. v. Motwiller*, 101 Tex. 515, 109 S.W. 918; *McIver v. Gloria*, 140 Tex. 566, 169 S.W.2d 710; *Southwestern Freight Lines v. McConnell*, Tex.Civ.App., 254 S.W.2d 422, wr. er. ref. This rule requires that a plaintiff introduce evidence from which a jury

may reasonably measure in monetary terms his earning capacity prior to injury, unless some reason appears for his failure to do so. The reason for this rule is that although the amount of damages resulting from impairment of a plaintiff's earning capacity must be left largely to the sound judgment and discretion of the jury, nevertheless the jury should not be left to mere conjecture where facts appear to be available upon which the jury could base an intelligent answer. In this case, Bonney introduced no evidence of the amount of his earnings prior to injury and no evidence that such prior earnings did not represent his full earning capacity. No reason appears for his failure to introduce such proof. Therefore, the trial court erred in instructing the jury that it might take into consideration any impairment to Bonney's earning capacity, and this cause must be remanded to the trial court for a new trial."

The statement on the law copied in the above paragraph was likewise copied in *Rubner v. Kennedy*, 417 S.W.2d 860, 862 (Tex.Civ.App.—San Antonio, 1967, writ ref'd n. r. e.). In *Rubner*, as in the case of *Bonney*, and as is likewise true of the case before us, there was preservation of the right to complain of pertinent jury answers on the grounds of "no evidence" and "insufficiency of the evidence". In *Bonney* and in *Rubner* there was order of remand for a new trial.

■ The evidence relative to Sections (c) and (d) of Special Issue 19 came solely from Mrs. Hudgins. She was age 65 when her injuries were sustained in April of 1974 and was 68 years of age when her case was tried in May of 1977 (she would be 69 years of age as of date of this opinion). Indicated by the evidence is that she had not worked from some date within a year prior to the time she reached the age of 62 (1971) and began to benefit by the benefits to which she was entitled under the federal Social Security Act. From the time she passed her 62nd birthday until the time of the collision resulting in her injuries in April of 1974, she had not worked to earn money.

In other words, so far as the evidence reveals, there was a period of between three and four years immediately prior to the time she was injured in which she had not worked or earned anything.

The evidence does raise the issue of whether she was able to do physical labor immediately prior to her injuries. She did all her own house work and did gardening work which involved digging holes with a spade. Impliedly, she at that time had the physical ability to do the work in which she had skills, to-wit: as a seamstress, including alteration of garments. There was no evidence that during the three or four year period immediately prior to the collision she had put her skills to use in doing seamstress work, or work of any kind.

The following comprises part of the statement of facts upon direct examination of Mrs. Hudgins by her own counsel:

"Q. At any rate, when that store closed up, did you—after that, after '61 or '62 at Flow, and then six years with Jim Stone, and then two years with the fellow that bought him out, did you ever then work back out in for the public in a business? Now, I am talking about business establishment?

"A. No, I decided that I would go into my own business, and I converted my garage into a sewing room, and I had just planned to set up when this accident occurred."

There was not evidence from anyone which provided a "yardstick" or measure for Mrs. Hudgins' earnings or earning capacity had she been able to work between date of her injuries and date of trial. The same is also true from date of trial into the future, had the disability occasioned by her injuries not been existent. As applied to the period from date of injury to date of trial Mrs. Hudgins appeared to be well informed relative to exactly how much she could earn before there would result the diminution in the amount of Social Security benefits being received. She stated, relative to her discussion with her accountant, that she had talked to him and was fully informed. With such knowledge, neverthe-

less, she "planned to drop my social security and really go into it (business in her garage) for at least three years." There was adequate evidence that because of her injuries Mrs. Hudgins had been unable to do any work after the accident in April, 1974. As already noticed, she was 68 years old in May of 1977 when the case was tried.

It was shown that even before 1962 Mrs. Hudgins was a capable seamstress; that until about 1968 she worked for Jim Stone's Clothing Store; that after about 1968, when Stone sold the store to another, she continued to work for two more years, or until about 1970 when she would have been 61 years of age and nearing the age of Social Security eligibility. Cessation of work, at least insofar as revealed by the record, began at that time. There was no evidence upon the earnings of Mrs. Hudgins at any time, even the year before she ceased working. The jury, though aware of some earning capacity to be lost, could only speculate upon its value in arriving at answers to Sections (c) and (d) of Special Issue 19.

As applied to others of the points of error presented by Mr. Stoner we hold there was not reversible error presented by any of them, and they are overruled for that reason. There is not occasion for lengthening this opinion in a discussion.

■ We do take occasion to approve the submission of Special Issue No. 1 in the court's charge to the jury, it being based upon a suggested submission in Texas Pattern Jury Charges, 5.06d, "Red Light ___ Broad-Form Submission (New)", in 1973 Cumulative Supplement to Volume 1. The submission was as follows:

"SPECIAL ISSUE NO. 1.

"Do you find from a preponderance of the evidence that on the occasion in question the Defendant, WILLIAM H. STONER, entered the intersection contrary to law?

"The law requires a driver on University Drive, facing a steady red signal at Alice Street, to stop before entering the intersection and to remain standing until a signal light indication to proceed is shown, except that after so stopping, he may turn right, after standing until it would appear to a person using ordinary care that the intersection may be entered safely and after yielding the right-of-way to other vehicles."

While more of the law was written for the instruction of the jury than appears necessary, we are of the opinion, contrary to the contention of Mr. Stoner, that it did not amount to a comment upon the evidence or weight thereof. Even if it was error it was harmless.

■ In view of the fact, by stipulation, that Stoner had paid, by advance payments prior to the trial, the sum of $5,379.20 to the benefit of Mrs. Hudgins under the provisions of Tex.Rev.Civ.Stat.Ann. art. 3737g, "Advance payment to tort claimants; introduction of evidence," the trial court, in calculation by which it arrived at the judgment amount, erred by application of the credit to which Stoner was entitled. When § 4 of the article is read in conjunction with § 1, it is obvious that the intention of the legislature was that the term "total damages" as used in § 1 means the total amount of damages to which a claimant would have been entitled by judgment after the application of percentage of contributory negligence operative to reduce the actual damages found by the jury in the calculation of the amount for which judgment would ordinarily be rendered where there had been no advance payments such as those considered in art. 3737g. Under Tex.Rev.Civ.Stat. Ann., Title 1, "General Provisions," sub. "Construction of Laws," art. 10, "General Rules," is provided that a court shall look diligently for the intention of the legislature, keeping in view at all times the old law, the evil and the remedy, in a construction of civil statutory enactments. It is obvious that to construe art. 3737g other than as we have stated above would be to permit unjust enrichment to a claimant if the credit for advancements should be given before the reduction of the amount of the

jury finding on damages rather than to the amount of claimant's entitlement after application of a reduction because of the percent his negligence was found to have contributed to his damages. A narrow verbal construction should not be permitted to vitiate the public policy sought to be served; and especially is this so where the narrow construction discourages rather than encourages the very action which the legislature has sought to foster and promulgate.

■ We need not outline the method of calculation applied by the trial court, but it resulted in Stoner's having failed to receive approximately $1,100.00 in credit to which he was entitled by our construction of art. 3737g.

Had the trial court disregarded the findings of the jury on damages made in answer to Special Issue No. 19, §§ (c) $3,000.00 and (d) $10,000.00 (a total of $13,000.00), and had there not been any advancements to Mrs. Hudgins by Stoner, the correct amount to be awarded Mrs. Hudgins by the judgment would have been $28,440.00 by applying the percentage that her negligence contributed to her total damages. And, had the trial court so calculated there would be the necessity, in addition, to grant an additional credit of $5,379.20 (stipulated to have been the total advancement by Stoner by the provisions of art. 3737g), resulting in a judgment in favor of Mrs. Hudgins which we could have affirmed in the amount of $23,060.80. Judgment of the trial court was for $34,536.64, a difference of $11,475.84.

In other words the judgment was excessive by the amount of $11,475.84, upon which amount the 9% interest from judgment date of June 9, 1977, would not be properly assessed.

The calculation erroneously made by the trial court under art. 3737g would constitute subject matter which this court could correct and in so doing would be empowered to reform and render judgment.

■ Consideration by the trial court of the answers of the jury to Special Issue 19, §§ (c) and (d), would not be a matter which this court could correct. To hold error be-

cause of the want of evidence to support the findings, the same being an integral part of the total amount which was the calculable answer to Special Issue No. 19, the ultimate finding to be made by the jury would require a remand of the entire case.

However, should Mrs. Hudgins desire to file a remittitur in the amount of $11,-475.84, this court would have the authority to accept the same, and, upon acceptance, the authority to reform and affirm the judgment rendered below.

Under the circumstances our order must be: Judgment reversed; with the cause remanded for another trial.

## SUPPLEMENTAL OPINION ON MOTION FOR REHEARING

### PER CURIAM.

Appellee Willa Hudgins has filed her motion for rehearing in the cause, and, subject thereto and in the event it be not sustained has tendered remittitur in the amount of $11,475.84 which the court stated in its opinion of June 22, 1978, it would have the authority to accept, and, upon acceptance, to reform and affirm the judgment of the trial court.

By reason of appellee having filed her motion for rehearing in the cause, the appellant William Howard Stoner filed his motion for rehearing, which was by the clerk of the court accepted and filed. Appellee has filed a motion to dismiss such motion on the ground that it was not timely filed.

The motion to dismiss the appellant's motion for rehearing is overruled; however, such motion for rehearing is overruled after having been entertained.

Appellee's motion for rehearing is overruled. The remittitur of $11,475.84 by the appellee, filed subject to her motion, is honored, as follows:

Judgment of this appellate court is that, in view of the remittitur filed by appellee, Willa Hudgins, the judgment of the court below dated 9 June 1977, awarding damages in the amount of $34,-

536.64 to Willa Hudgins as plaintiff and against William Howard Stoner as defendant is reformed as to amount; and as so reformed judgment in favor the plaintiff as against the defendant in the amount of $23,060.80, plus costs and plus interest at the rate of 9% per annum from 9 June, 1977, is affirmed. The costs on appeal are adjudged 50% as against the appellant, William Howard Stoner, and 50% as against appellee, Willa Hudgins.

Our judgment (but not our opinion) of June 22, 1978, is vacated and set aside with judgment as described hereinabove substituted therefor.

No further motion for rehearing in this case will be entertained; none may be filed.