**DALLAS RAILWAY & TERMINAL CO. v.
ENLOE et ux.**

No. 14138.

Court of Civil Appeals of Texas. Dallas.
Nov. 18, 1949.

Rehearing Denied Jan. 6, 1950.

Burford, Ryburn, Hincks & Ford and Roy L. Cole, Dallas, for appellant.

White & Yarborough, Dallas, for appellees.

CRAMER, Justice.

Appellees, Enloe and wife, sued appellant for damages for personal injuries and for property damage to their automobile growing out of a collision between a street car, traveling north on its right of way as it came out into East Waco Street, and appellees' automobile, traveling east on said Waco Street. The verdict was for $31,000 which, on motion for new trial, was reduced by remittitur to $20,000. This appeal is from the $20,000 judgment after such remittitur.

Appellant assigns nine points of error which will be considered in four groups. The first group (points 1, 2, and 3) complains of the trial court's action in overruling appellant's objections to the court's charge for the reason that it omitted the word "sober" after the words "ordinarily prudent" and before the word "person" in its definition of (1) ordinary care; (2) proximate cause; and (3) proper lookout. In other words, defendant desired the standard of care in each definition to be that required of "an ordinarily prudent sober person." The evidence on the issue of intoxication, as shown by the record, was disputed. No issue, or explanatory instruction, or definition including such additional element was requested or submitted to the jury. Under such circumstances, taking into consideration the conflict in the evidence on intoxication, it is our opinion that the addition of the word "sober" in each of the three definitions would have been a comment upon the evidence.

We recognize the rule that if the definition is erroneous, an exception to the definition is sufficient, without a request for a special instruction, or proper definition; but such rule does not apply here where the issue of intoxication is a controverted issue, or where a standard definition omits elements which defendant considers should be included therein. Great American Indemnity Co. v. Sams, 142 Tex. 121, 176 S.W.2d 312, opinion adopted by the Supreme Court. The case of San Antonio Public Service Co. v. Fraser, Tex.Civ.App., 91 S.W.2d 948, where intoxication was undisputed, is not applicable here. Neither is Missouri-K & T Ry. Co. v. McGlamory, 89 Tex. 635, 35 S.W. 1058, where specific instruction on the defense of intoxication as a defense of contributory negligence was requested by appellant to be submitted to the jury. Appellant also cites Speer on "Law of Special Issues," sec. 580, where suggested issues on intoxication as a defense of contributory negligence are set out. Since no such issues were requested, this citation is not in point. The assignments are overruled.

In the second group of points (4 and 5) appellant complains of the excessiveness of the verdict in favor of Geneva Enloe for $13,000 after remittitur of $7,000 from the jury verdict of $20,000, and of the $6,000 judgment after remittitur of $4,000 from the jury verdict of $10,000 in favor of Billy L. Enloe for personal injuries plus $1,000 automobile damages. We have fully reviewed the evidence and are of the opinion that, although the trial court required an $11,000 remittitur before his judgment was entered, the judgment is still excessive. Geneva Enloe testified in part that she was 23 years of age; she was unconscious after the accident and the first she remembered, she was in the hospital; she had a cut about five inches long from the hairline in front to the back of her head, which was exhibited to the jury; a cut about four inches long on her left hip which bled until it was stitched up; her shins were cut, necessitating stitches; her leg and foot skinned and both ankles sprained; after treatment at Parkland Hospital she was taken home where she was confined to her bed for about three months; she was dizzy and the head wounds were sore; she was unable during that time to do any labor or work; she has

had headaches, off and on, and at time of trial still had the same kind of headaches; her left ankle still swells and is painful when she is on her feet; she had never had an accident before this one and had no trouble of any kind with her ankle; did not, before the accident, suffer with the headaches she now experiences; she has not been able to work out of the home since the accident, but before the accident was able to hold a job doing office work.

Billy L. Enloe, an army pilot, testified that both he and his wife were thrown out of and clear of his automobile; he was taken to Parkland Hospital where he was treated for a cut below the eyebrow, a cut in the right eyeball, a cut through the bridge of his nose and a cut underneath his right eye; also a cut on his knee and shin, each about an inch long; that it required 17 stitches to sew up the cuts around his right eye; he suffered considerable pain in his leg; was removed by army ambulance to Love Field Hospital where he remained for seven days; then transferred to Fort Worth airfield hospital where he was confined for six additional days; he was grounded as an army pilot for five months, due to impairment of his vision; his right eye now tends to tire before his left eye; eyelid flickers and his eye waters; his eyebrow gets sore and he developes headaches from the soreness in his right eye below where he was cut; scar tissue formed in his right eyebrow and made a knot which feels numb; when it is touched, the feeling is in his hairline; he has headaches which originate around his eye about every month or six weeks and last from 24 to 48 hours; the headaches cause pain; the flickering of the eye tends to cause it not to function as well as it should; and since the accident he has taken sick leave a few days as result of such headaches.

██ Considering all the evidence, we feel that a recovery of $7,000 in favor of Geneva Enloe and $2,100 for personal injuries plus $900 damage to the automobile in favor of Billy L. Enloe should be the maximum recovery herein by said parties. This does not require a reversal of the judgment, however, if a remittitur is filed by appellee for the amounts hereinabove found to be excessive within 10 days from this date.

The third group of assignments (6, 7, and 8) involve jury argument asserted to be so prejudicial as to require a reversal of the case, even though no objection was made or exception taken by appellant at the time such argument occurred. Appellant's bill of exception No. 4 shows the argument complained of. In the opening argument appellees' attorney stated: "And I say to you people that this whiskey business, this whiskey has been manufactured and put into this lawsuit. It wasn't there. They brought a man here that testified that he saw it, he saw this whiskey bottle out there. He pointed it out to another man there and he picked it up and they smelled of it, and one of them said it was lying on a piece of upholstery, one said it was lying on the ground, one said there was some women's clothes around, another said he didn't see any women's clothes around. There was no women's clothes in the car, no suit cases in it, no upholstery knocked out of the car at all. Trying to fix something, trying to get those two people on that whiskey out there. It is one time they are dealing with teetotalers, and if the whiskey bottle was out there, somebody put it out there, probably, in my opinion, under this evidence."

In the closing argument appellees' attorney stated: "Mr. Ford is appealing to you because I said it looked like they manufactured the stuff. He said, 'Well, if they manufactured it, that is me, too, and I have been here a week; so I want you to not accuse me of manufacturing it and just put it off on me of arranging the whole thing.' Suddarth in here, as I understand the witnesses, everyone said it was the man Suddarth, not Ford. I think Ford put on just what Suddarth brought here, slung them right on there. No one said anything about Mr. Ford doing it—the evidence shows Suddarth brought them. Suddarth went to the hospital right after the accident, rushed out there; Suddarth got the man from Lindale; Suddarth got the man from Commerce; Suddarth talked to

the police officer. Suddarth went out with the camera man and told him where to put the camera and told him where not to put it. Suddarth went out with Smith and told him where to measure and where not to measure, * * *. Now, that is the kind of evidence that Mr. Suddarth and the Dallas Railway and Terminal Company brings in here. That is what you have had to listen to."

The bill, as to this argument, was qualified by the trial court as follows: "The argument contained in the bill of exception and beginning with the words 'Mr. Ford is appealing to you * * *' was made in answer to Mr. Ford's argument which is quoted in plaintiff's counsel's argument and set out in the paragraph beginning with the words hereinbefore quoted. Mr. Ford was not mentioned or referred to by counsel for plaintiff in his opening argument."

Also, in the closing argument appellee stated: "That's right, the people did, and the people selected him to be a pilot. And Lo and behold, they found him physically fit to be a pilot and they found him morally fit to be a pilot, and they didn't find any trouble with his eyes when they took him to be a pilot. They didn't find any concussion of the brain when they took him to be a pilot, and they didn't find that he was a liquor drinker, or at least under alcohol to the extent that he couldn't run an airplane for the government. At least the people—the people were willing to trust him with thousands of dollars worth of valuable equipment up in the air with him at the controls, in spite of the fact he has been charged with being a drinker, and in spite of the fact now that he is still charged with it and he is working for an air line. That is the kind of man that they say was drinking out there and the policeman said he smelled it; he smelled it, and his wife was walking around holding his hands, and he never told—he never signed any statement."

The trial court qualified the bill on this argument as follows: "The third quoted argument beginning 'That's right, the people did * * *' was not the beginning of the paragraph. The following sentence immediately preceded the above quotation and the following sentence was the first sentence of the paragraph: 'Mr. Ford says, "Oh, the people took care of it, so don't make us pay anything." ' The third quoted argument beginning 'That's right, the people did * * *' was in reply to Mr. Logan Ford's argument in which he said that Billy L. Enloe was not out anything, that the Government paid him during the time he was off, and that the people took care of it."

In the closing argument appellee also stated: "Gentlemen, I will say this: those young people sitting back there appear to me to be as straightforward and as true as I have ever seen or heard. They are clean—told the story exactly like it was. * * * We told you the simple, unadulterated truth and facts about it." The bill as to this argument was qualified by the trial court as follows: "The fourth quoted argument makes an omission between the words 'told the story exactly like it was' and the words 'We told you the simple * * *.' The following argument was made between the words 'told the story exactly like it was' and the words 'We told you the simple * * *': 'She could have said "Oh, yes, I did look and I didn't see it," or she did see it, or something, but she doesn't claim she looked at all. She says she didn't look—she had no occasion to be looking or trying to see. She could have said "My hip still hurts, where they sewed it up, where that place was cut," but she doesn't tell you that because it doesn't. She could tell you "I have to go to bed every week on account of this cut I got in my scalp about 4½ inches long," but she doesn't have to go to bed with it, so she didn't tell you that. He didn't tell you, "Well, my eye just aches and pains and burns all day every day in my work," and nobody could have refuted it if he had said it, but he didn't tell you that because it doesn't'."

The authorities on improper argument are numerous and we will not endeavor to quote from them, since each case must stand on the facts in that case. Our Su-

preme Court, speaking through Justice Sharp in Ramirez v. Acker, 134 Tex. 647, 138 S.W.2d 1054, has fully stated the general rules as to when argument is reversible, where no objection is made at the time of the argument and no opportunity given the trial court to cure any error in the argument by instruction at the time, but is raised for the first time in the motion for new trial based on a bill of exception made after verdict, and we will not restate them here.

■ Applying such rules, we are of the opinion that the bills of exception to the argument quoted, and as qualified by the trial court, do not show such argument as the court could not have cured by proper instruction at the time it was made. Too, the remittitur required would render such argument harmless, even if it were considered prejudicial. The assignments are overruled.

■ Appellant's last point (9) complains of the trial court's including in the damage issue appellee Geneva Enloe's "future physical and mental pain" because there was insufficient pleading and no evidence thereon. We have examined the pleadings and find they sufficiently allege such element of damage. There was no expert medical testimony, but the evidence given by appellees, hereinbefore set out, did show the nature of the injuries and their continued and existing condition at the time of the trial some 3½ years after the accident. In our opinion this testimony raised the issue of future pain and suffering on the part of Geneva Enloe. Pain and suffering will be implied from continued headaches, pain and swelling which continued from the time of the accident and were present at the time of the trial some 3½ years after the accident. Dallas Railway & Terminal Co. v. Davis, Tex.Civ.App., 26 S.W.2d 340, Syl. 6. This assignment is overruled.

It is therefore our order that if a remittitur is filed by appellees within 10 days from this date, the judgment below will be affirmed for the balance; otherwise the judgment will be reversed and remanded.