**H. J. HEINZ COMPANY et al., Appellants,**

**v.**

**Lamar ASHLEY et al., Appellees.**

**No. 12939.**

Court of Civil Appeals of Texas.

Galveston.

May 31, 1956.

Rehearing Denied June 14, 1956.

an automobile driven by him and a truck driven by defendant Batie in the course of his employment by defendant, H. J. Heinz Company. Plaintiff alleged negligence of defendant in various ways was the proximate cause.—Plaintiff's collision insurance carrier intervened to recover the payment it had made plaintiff.

In trial to a jury, plaintiff was found to have sustained damages in the amount of $30,100 and the intervenor additionally recovered $705.06. The court, after requiring a remittitur of $10,000, rendered judgment for plaintiff in the sum of $20,100 and rendered judgment for intervenor, as indicated above, for $705.06.—During the course of the trial, defendants urged two motions for a mistrial; also urged objections to the court's charge, and urged a motion for judgment non obstante veredicto.

Defendants predicate their appeal upon six points, contending that the court should have declared a mistrial (1) because plaintiff voluntarily injected into the evidence a statement concerning reports required by the Safety Responsibility Act, and (2) because plaintiff voluntarily injected the subject of insurance coverage into the evidence. Defendants in four points urge reversal of the judgment in connection with special issue No. 12 and the answer thereto.

We overrule defendants' first and second points.—It appears that while testifying as to the report of the collision he made to the Harris County Patrol, he stated, "Well, in the meantime several wreckers have gotten there, so the Harris County Patrol asked how it happened and I told them, and they gave me a form to fill out to send to Austin and they said I would have * * *" (At this point plaintiff was interrupted by defendants' objection and motion to declare a mistrial). The trial court overruled the motion and instructed the jury not to consider plaintiff's statement regarding the forms for any purpose.

It is provided in the Safety Responsibility Act, Art. 6701h, Art. III, Sec.

B. Jeff Crane, Jr., and J. M. Hopper, Vinson, Elkins, Weems & Searls, Houston, of counsel, for appellants.

Charles R. Hancock, Reagan Cartwright and Bates & Cartwright, Houston, for appellees.

CODY, Justice.

This is a suit by Lamar Ashley against H. J. Heinz Company and Marvin Batie, one of its truck drivers, to recover damages alleged to have been sustained by plaintiff on September 14, 1953, near Baytown as a result of a collision between

4, V.A.T.S., that in instances therein provided the operator of motor vehicles shall make a report of the accident to the Highway Department. Section 11 of said Article provides, "Neither the report required by Section 4, the action taken by the Department pursuant to this Article, the findings, if any, of the Department upon which such action is based, nor the security filed as provided in this Article shall be referred to in any way, nor be any evidence of the negligence or due care of either party, at the trial of any action at law to recover damages." The effect of the quoted law is to make inadmissible the report required thereunder, or even to mention the same in suits brought in connection with accidents required to be reported. No reversible error was committed by the court in the ruling which he made because defendants objected to the evidence before such evidence had proceeded far enough to identify the form which plaintiff testified had been given him by the Harris County Patrol to fill out and send to Austin. Again, Sec. 4 aforesaid does not imply that such required report will show that the person making the same is protected by insurance. The report is required to contain "information to enable the Department to determine whether the requirements for the deposit of security under Section 5 are inapplicable by reason of the existence of insurance or other exceptions specified in this Act."—The testimony objected to was certainly of a nature that the error involved in the abortive mention of the "form" could be cured and was cured by an instruction of the court not to consider same.

Thereafter, testifying in response to his attorney's questions, plaintiff testified that he told the first wrecker to get to the scene of the accident, that he could take plaintiff's car in to Al Parker (A Buick dealer in the City of Houston). Plaintiff went on to testify that he next called his agency "and reported it to my insurance agent." Defendants' attorney thereupon objected that such evidence "is prejudicial." The court then had the jury withdrawn. What took place in the absence of the jury is not to the purpose here. The attorney for

plaintiff was also the attorney for the intervenor and he waived on behalf of the intervenor any prejudice to the intervenor such mention that plaintiff was covered by insurance might have. Then, upon the jury being returned to the courtroom, the court instructed them not to consider for any purpose any statement made by plaintiff about going to see his insurance agent or anything to that effect and "you will not mention or consider [it] for any purpose whatsoever in arriving at your verdict in this case."

In various cases the courts have stated broadly that the introduction in evidence as an independent fact that either party to the suit is protected by insurance is reversible error. See Moore v. Dallas Railway & Terminal Co., Tex.Civ.App., 238 S.W.2d 741, 743. But in the cited case the statement was dicta because the court correctly held that, by way of impeachment of the insured's testimony on the trial of the case, the defendant could show that the insured reported to their insurer that their damages were materially less than the amount they testified to on the trial. In the first case cited in support of the last mentioned ruling, namely, McDonald v. Alamo Motor Lines, Tex.Civ.App., 222 S.W.2d 1013, it was held not to be error for defendant to prove that plaintiff was covered by health insurance, which proof was admissible to impeach testimony given by plaintiff on the trial. In the case of Rojas v. Vuocolo, Tex.Civ.App., 177 S.W.2d 957; Id., 142 Tex. 152, 177 S.W.2d 962, the facts were that appellee (plaintiff) was injured in a collision while riding as a passenger in a taxicab. The plaintiff sued four defendants, namely, the driver and part owner of the truck with which the taxicab collided, the owner of the taxicab, the driver of the taxicab, and the owner of the taxicab company from whose stand plaintiff procured his taxi service. Near the conclusion of the trial a juror spoke up and asked the driver of the truck if he was protected by insurance. The court immediately ruled that the question was improper and that the truck driver should not answer it. However, counsel for the

truck driver (who had no insurance protection) advised the court that he had no objection to his client answering the question. Plaintiff's counsel informed the court his client had no objection to the question being answered. Counsel for the owner of the taxicab company and counsel for the owner of the taxi both objected to the question and to it being answered.

The court ruled that the plaintiff "impliedly" expressed his willingness that the witness tell the jury whether the truck owner had insurance, thus putting the other three defendants " 'on the spot' by inference, as it were, as to whether they had insurance." The defendants, other than the truck driver, were in the same boat. By their objection to the truck driver telling whether he was insured or not, which the defendants were under the circumstances forced to make in effect, informed the jury that said defendants were protected by insurance and so prejudicial to said defendants. The court there held that said evidence was irrelevant "and its consideration by the jury is calculated to work injury." Thus the court deemed the evidence as to insurance to be prejudicial.

The case of Myers v. Thomas, 143 Tex. 502, 186 S.W.2d 811, 813, was a compensation recoupment suit. The intervenor moved the trial court not to permit any of the pleading relating to the settlement of the compensation claim to be read to the jury. In the cited case it was held that evidence that the compensation insurance carrier had paid compensation benefits beclouded the issues in the case, and diverted the minds of the jury. So, it is well settled that to permit to go before the jury information that compensation has been paid to the plaintiff is prejudicial.

■ But in the instant case, the only prejudice claimed by defendants is that the mention by plaintiff that he had insurance would suggest to the jury that the defendants were covered or were protected by insurance. We think this conclusion is highly speculative and too remote to be indulged.

We come now to defendants' points relating to special issue No. 12, which is the damages issue. Said issue was submitted to the jury in usual form and specified the elements which they should consider in fixing damages. The jury's answer sheet followed the court's direction and showed that the jury fixed plaintiff's damages at $30,100. However, the court noticed from the court's charge which the jury had taken with them that the jury used said charge as a work sheet and had entered notations opposite each element, and the court developed from questioning the jurors that such notations represented the amount of damages that the jury allowed with respect to the various specified elements. With reference to the element relating to plaintiff's decreased ability to earn money in the future, the notation indicated that the damages allocated to that element were $25,500. The court polled the jurors and each stated that they fixed the damages for that element at that amount.—We do not pass on whether such finding in and of itself was a part of the jury's verdict, but it is made to appear that all parties in this case so accepted and treated said notations as findings of damages allowed by the jury with respect to each specific element.

The defendants submitted the following points relative to special issue No. 12: (a) That the court erred in submitting said special issue, (b) and (c) That there was no evidence, and insufficient evidence, to support the answer of the jury that appellee sustained damages in the sum of $25,500 for decreased ability to earn money in the future, and (d) That the court erred in overruling defendants' motion to disregard said special issue to the effect that plaintiff sustained damages in the sum of $25,500 for decreased earning ability in the future.

■■ Ordinarily the remedy applied by courts of civil appeals for verdicts of excessive damages is by requiring the filing of remittiturs. Rules 439–441, Texas Rules of Civil Procedure. The subject of remittiturs has been so often written about by this and other courts that it would be out of place to write a dissertation on such subject. Provision for remittitur was provided by the legislature before courts of civil appeals existed, and vested in the

Supreme Court. Prior to such legislation the Supreme Court had the practice of reversing and remanding a cause for a new trial where in that court's opinion the damages awarded were too excessive to be permitted to stand. The legislation providing remittitur was enacted to bridle such practice and power of the Supreme Court. When the courts of civil appeals were created the Supreme Court was relieved of this burdensome duty and power and the power of requiring remittiturs was saddled on courts of civil appeals. Now it is well settled that if in the opinion of the court of civil appeals the judgment for damages is too excessive to be permitted to stand, such court must fix the amount of damages which it will permit to stand; and if plaintiff does not accordingly file the required remittitur, remands the cause for a new trial. It is manifest that courts of civil appeals never consider that the evidence is sufficient to sustain the jury's finding of damages in cases wherein the filing of a remittitur is required. Of course, if a case should occur where there is no evidence to support any award of damages and the jury nevertheless awarded damages, the case would have to be reversed and rendered. There is probably no such case in the books.

■■ There is a third rule which is in proper instances applied by the courts. In International & G. N. R. Co. v. Simcock, 81 Tex. 503, 17 S.W. 47, in an opinion which was adopted by the Supreme Court June 23, 1891, another rule was applied. This was before courts of civil appeals were organized. It was there held, in a case where the plaintiff was injured in a train wreck and was seeking to recover for loss of time, "The rule is that, even where the law implies damages such as necessarily result from a wrongful act complained of, proof is required to show the extent and amount of damages." However, it is settled law that where plaintiff is seeking to recover for impairment of his earning capacity, "A very exact computation or assessment of the sum to be allowed in any particular case is doubtless impossible, and hence the determination of the amount is deemed

to be peculiarly within the discretion of the trier of facts. However, a verdict must be, not a mere conjecture, but an intelligent judgment, based upon proof of circumstances from which a conclusion is to be drawn." 13 Tex.Jur. 193–194, paragraph 93.

In McIver v. Gloria, 140 Tex. 566, 169 S.W.2d 710, 712, it was held that in a suit to recover for decreased earning capacity in the future, "the amount which the plaintiff might have earned in the future is always uncertain, and must be left largely to the sound judgment and discretion of the jury. However, the verdict must be based on something more than mere conjecture. It must be an intelligent judgment, based upon such facts as are available."

In the same case the court held that where plaintiff is employed at a fixed wage or salary, the amount of his previous earnings ordinarily must be shown, and, "If plaintiff's earning capacity is not totally destroyed, but only impaired, the extent of his loss can best be shown by comparing his actual earnings before and after his injury."

The facts here show that before the collision plaintiff, who was working for the Humble Oil & Refining Company, had been operated on for hernia and he was returning from the hospital after having had his final check-up in connection with his hernia operation when this accident occurred, before he had returned to work. It is apparent from the evidence already set out hereinabove that the collision was one from which plaintiff could walk away; he attended to having his automobile carried away by a wrecker and to the matter of his collision insurance. He had been working for the Humble Oil & Refining Company since 1940 or 1941 and had been steadily advanced. At the time of the accident he was making $2.50 per hour, and after he returned to his work there had been two advances in wages whereby he was making $2.70 per hour. Whether this meant an actual advance in salary or whether it was to take care of inflation is not made to appear. Presumably it was an advance in pay. The company doctor, who had given the

plaintiff his final check-up, told him he would be put on light duty. His injuries required him to wear a belt to support his back, his left elbow and arm were in a sling, and his back and neck were very sore and his left knee was bothering him as a result of the collision. His work was light and it was rotated in three different spheres, in none of which was there much physical activity. For several weeks after plaintiff returned to work, he was unable to climb stairs or bend over and he could not pick up anything. He testified that the condition only lasted for several weeks. His job did require him occasionally to walk up stairs. This he could not do. Later when he began walking up stairs his right knee began giving him trouble and he continued to have to wear a brace for his back. He had to have his knee operated on and had not been able to return to work again after such operation on his knee, which occurred some months after the collision. One cannot read plaintiff's testimony without concluding that he was, as all should be, quite candid and honest. He testified at the time of the trial that he could use the knee which had been recently operated on more every day.

Without detailing the evidence further, it is clear that the back would produce a certain amount of permanent disability; and the right knee, which had been operated on some three weeks before the trial had had the cartilage out and his doctor stated that there had not been time enough to forecast the operative procedure. His doctor said that he might develop secondary changes in the form of arthritis, and the doctor declined to testify as to what might develop in the future in plaintiff's knee, and testified that he might develop weakness of the quadriceps in the knee proper, partial permanent disability, to the extent of 25% or 30% as applied to the knee itself, and that was a conservative estimate. He could not testify whether or not plaintiff would have the secondary changes in connection with his right knee. The court, upon motion, struck this testimony as to arthritis from the record and instructed the jury not to consider same.

 We have reached the conclusion that the plaintiff brought forward the best evidence that existed in connection with the element of decreased earning capacity. This was all that he was required to do. McIver v. Gloria, supra. No good purpose would be served in remanding the case for a new trial.

The other members of this Court are of the opinion that defendants' alternative plea to require an additional remittitur is not justified and should be refused.

Accordingly, the judgment of the trial court is ordered affirmed in all things.

Judgment affirmed.