Steve George **VERHALEN, Jr.,** Appellant,

v.

James T. **NASH, Jr.,** et al., Appellees.

No. 7156.

Court of Civil Appeals of Texas.

Texarkana.

Dec. 1, 1959.

Rehearing Denied Dec. 22, 1959.

Thompson, Knight, Wright & Simmons, David M. Kendall, Jr., Dallas, for appellant.

Jones, Brian & Jones, Marshall, for appellees.

FANNING, Justice.

James T. Nash, Jr., a minor, and his father, James T. Nash, Sr., in a trial before a jury upon special issues, recovered judgment against Steve George Verhalen, Jr., for damages resulting from a collision between the motor scooter of James T. Nash, Jr., and the automobile of Steve George Verhalen, Jr. All the liability issues were found in favor of the Nashes, appellees herein, and against appellant Verhalen, Jr. The jury in response to special issue No. 7 found James T. Nash, Jr., to have been damaged in the amount of $10,-000 and in response to special issue No. 6 found James T. Nash, Sr., to have been damaged in the amount of $2,000. The parties had stipulated to the effect that James T. Nash, Sr., had necessarily and reasonably incurred doctors' bills, hospital bills, ambulance bills and scooter repair bills in the total sum of $867.15, and that in the event of a finding of liability the same should be added to any damages found. The above referred to stipulated $867.15 damages were awarded to James T. Nash, Sr., less the sum of $178.85 which was awarded to Lumberman's Insurance Corporation, an intervener in the suit. Appellant Verhalen, Jr., has appealed from the judgment of the trial court.

Appellant's appeal is taken on an abbreviated record and his points are all concerned with the question of damages.

Appellant by his first and second points contends to the effect that the verdict of the jury with respect to the damage issues (Special Issues Nos. 6 and 7) was excessive and was against the great weight and preponderance of the evidence.

The abbreviated statement of facts contains the testimony of five witnesses. Witnesses offered by the plaintiff were James T. Nash, Jr., James T. Nash, Sr., Mrs. James T. Nash, Sr., and Mrs. Corinne Deutsch. The only witness offered by defendant was Dr. N. F. Holcomb.

James T. Nash, Jr., called "Petesie," a 13-year-old boy, among other things, testified to the following effect: That he had a paper route, delivering newspaper, from which he derived a revenue of from $7 to $9 per week; that up until the collision in question he had been in good health with nothing wrong with his legs or any part of his body, that after the collision occurred blood was running down over his eye, his leg was swollen and he could not get up, was carried to a hospital, a cut on his leg was sutured, that he then had severe pain in his right thigh, that he was placed in traction, a pin about the size of a nail was run through his leg just above his knee on each side which pin was attached to a rope which had weights on it which pulled so hard that it pulled him out of bed and then ropes were put on him to hold him in bed, that he suffered a good deal of pain by reason of the traction, that his head hurt and he was hurting all over, including his back, that he still has pain in his back and his back feels like it is pulled apart, that after staying in the hospital (about four weeks) he went home but continued to suffer some pain in his leg, back and head, that he was re-hospitalized (for a period of a little less than two weeks) when the pin was taken from his leg and his leg was not deadened for this operation and on this occasion he suffered some pain, that after he was discharged from the hospital he went home on crutches and got off of the crutches right before the beginning of summer, that during the summer he continued to suffer severe pain at the broken point in his leg and continued to have severe headaches, that at the time of the trial he has headaches about every other day and continues to have leg pains and that he could not run like he did before he was hurt, limps at the present time even though he tries not to, that when he runs he loses his balance on account of his short leg and sometimes falls, that he cannot get full co-operation from his knee which is stiff, that from the date of the collision up to the present time he had never had the right use of his leg like it was before it was hurt, that there had not been a single week since the collision occurred that he has been entirely free of pain, that in his physical education classes he cannot do what the other children do and that when he plays football he has to get in the line and block because he can not run fast enough to run with the ball, and that he did not have his paper routes back.

Also Petesie walked before the jury in order to demonstrate the nature and extent of his "limp" so that the jury could observe same and the manner of his walking.

Mrs. James T. Nash, Sr., mother of Petesie, also testified. A fair summary of pertinent portions of her testimony are shown in appellee's brief, and we quote from such summary as follows:

"Mrs. Nash has five children, consisting of three boys and two girls. The nature of Mr. Nash's work is such that he is away from the family for periods of time. Petesie Nash was a very healthy child, he had very few even childhood diseases, and in fact, all he had was the mumps. There were periods of time when Mr. Nash was out of work, and his earnings were not such as to permit the hiring of help, for the younger children. Petesie Nash has been a help to his mother since a very young age, he has dried dishes and carried out trash cans and helped hang up clothes, and after the

other children arrived, he would pin diapers on. Petesie Nash loved football, and he was always very active with all of his playmates, and he belonged to the Little League ball team, but loved football best. Petesie Nash had a paper route, and averaged around $10.00 a week earnings from this paper route, some weeks he would earn a little more and some weeks a little less. Petesie used the money he earned from his paper route as his spending money as well as his brother's spending money. Had this spending money not been earned by Petesie, there would have been something else that would have gone out for the boys to have a little spending money, but they wouldn't have had that much. Petesie Nash complained of pain in his sleep, as well as awake; he wasn't too much to complain, and you would know he was in pain, and he would be asleep and wake himself up and he would be crying in his sleep.

"Petesie Nash was flat of his back continuously for January-February and most of March, he had never been flat of his back before except when he had the mumps, and he developed bed sores which alcohol and powder would not alleviate. Petesie Nash complained of headaches and backaches and occasionally his leg hurt him, but recently, he has backaches and headaches oftener than his leg hurts him. These complaints have continued to this time. Since Petesie got rid of the crutches, he may sit in the rocking chair and hold Debbie, the baby, but he is not too good at doing anything. He is slower but he still occasionally washes dishes for Mrs. Nash. He does not help her to the extent he did before. Mrs. Nash does not ask him to help because Petesie has headaches and goes and lays down. Mrs. Nash cannot tell too terribly much difference from the way Petesie gets around now and the way he got around in August

when the case was first tried, but there is a considerable difference from the way he got around right after he got off the crutches and the time of trial. Mrs. Nash cannot perceive any change at all in the way Petesie has been getting around in the last two or three months. At the time of the trial, when Petesie is out walking with his mother, he limps, and he tries to kind of swagger because children that age are more inclinded to be a little vain. Petesie is very conscious of his leg, and he has asked his mother on a number of occasions, 'Mother, do you think that they noticed, I hope they didn't.'— and his mother tells him that she doesn't think they really did; but of course, she knows that they did. Petesie, when he first was admitted to the hospital, had cuts on his head, and there was a knot that was over his left eye about the size of two fists. It was a huge thing and it looked like he was deformed. It could be told that Petesie had received a severe blow to his head."

The testimony of Mrs. Corinne Deutsch and James T. Nash, Sr., is also strongly corroborative of the testimony of Petesie and of his mother with respect to the pain and suffering of Petesie, and with respect to the nature and description of his injuries and his disabilities.

The testimony of plaintiffs and plaintiffs' witnesses is amply sufficient to sustain the verdict of the jury on the damage issues.

Dr. Holcomb was offered as a witness by defendant. Most of his testimony is favorable to defendant and if his testimony was fully believed by the jury a much lesser verdict on damages could have been found by the jury as it was his opinion that although one of Petesie's legs was ½ inch shorter than the other that he would get all right in time and he in short minimized the disabilities to the leg. He also found no disability to Petesie's head or

back. However in some respects his testimony was favorable to appellees as he testified that there was a ½ inch difference between Petesie's legs, that Petesie complained to him of headaches, that it was difficult to determine the exact amount of growth Petesie's leg would attain, and that there may be an undergrowth, an overgrowth, or the legs may be the same, that where there is no history of unconsciousness the most obvious symptom of concussion is complaint of headaches following a history of head injury and there was no history of any other cause of Petesie's headaches except his receiving a blow to the head and that he would attach importance to persistent headaches since the time of the injury. Dr. Holcomb also was of the opinion that Petesie did not sustain any back injuries; however, on cross-examination he admitted that he had never X-rayed Petesie's back. He also had not X-rayed Petesie's head.

The jury was the judge of the credibility of all of the witnesses, including the doctor, and of the weight to be given their testimony. It was for the jury to weigh and consider the testimony of the doctor, and to give credence to such portions of the same as they determined in the proper exercise of their jury function.

It is well settled law in this state that expert testimony is not required to uphold a finding of injury. Coca Cola Bottling Co. of Ft. Worth v. McAlister, Tex.Civ. App., 256 S.W.2d 654; Southern Ice & Utilities Co. v. Richardson, Tex.Civ.App., 60 S.W.2d 308, reversed on other grounds 128 Tex. 82, 95 S.W.2d 956; Dallas Ry. & Terminal Co. v. Enloe, Tex.Civ.App., 225 S.W.2d 431, wr. ref., n. r. e.; Armour & Co. v. Tomlin, Tex.Civ.App., 42 S.W.2d 634, affirmed Tex.Com.App., 69 S.W.2d 204.

We have carefully reviewed all the evidence and find that the verdict of the jury on the damage issues was not excessive.

We have also carefully considered all the evidence in this case in the manner and under the rules laid down by the Supreme Court of Texas in the case of In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, and hold that the verdict of the jury on the damage issues in this case was not so contrary to the overwhelming weight and preponderance of all the evidence as to be clearly wrong and manifestly unjust.

Appellant's first and second points are respectfully overruled.

Appellant by his third, fourth and fifth points contends to the effect that there was no evidence that James T. Nash, Sr., would suffer a loss of services or wages from James T. Nash, Jr., in the future, that there was no evidence of the value of any such contributions, that there was no competent evidence that James Nash, Jr., would suffer physical or mental anguish in the future, that there was no competent evidence that James T. Nash, Jr., would suffer any loss or ability to labor and earn money after reaching 21, that there was no evidence as to the amount by which his earnings might have been diminished after reaching 21, and that by reason of no evidence on these matters the trial court erred in submitting these elements in Special Issues Nos. 6 and 7.

Recovery may be had for future physical pain and suffering if the evidence shows that there is a reasonable probability of such consequences. 13 Tex.Jur. p. 474, Sec. 274; Galveston, H. & S. A. Ry. Co. v. Powers, 101 Tex. 161, 105 S.W. 491; St. Louis Southwestern Ry. Co. of Texas v. Garber, Tex.Civ.App., 108 S.W. 742; Gulf, C. & S. F. Ry. Co. v. Harriett, 80 Tex. 73, 15 S.W. 556; Fisher v. Coastal Transport Co., 149 Tex. 224, 230 S.W.2d 522.

In Turner v. McKinney, Tex.Civ.App., 182 S.W. 431, 435, wr. ref., after setting out the facts in that particular case, it was held: "We think the evidence above quoted sufficiently shows physical pain and mental suffering up to the time of the trial, and that the plaintiff will probably suffer mental anguish and physical pain in the fu-

ture. Mental suffering will be implied from illness, or injuries, accompanied by physical pain (citing authorities)."

In Dallas Railway & Terminal Co. v. Enloe, Tex.Civ.App., 225 S.W.2d 431, 435, wr. ref., n. r. e., it was said:. "There was no expert medical testimony, but the evidence given by appellees, hereinbefore set out, did show the nature of the injuries and their continued and existing condition at the time of the trial some 3½ years after the accident. In our opinion this testimony raised the issue of future pain and suffering on the part of Geneva Enloe. Pain and suffering will be implied from continued headaches, pain and swelling which continued from the time of the accident and were present at the time of the trial some 3½ years after the accident."

It was held in Dallas Railway & Terminal Co. v. Davis, Tex.Civ.App., 26 S.W. 2d 340, that mental and physical pain will be implied with continued illness.

█ We hold that there is evidence in this case of probative force sufficient to raise the issues of reasonably probable future physical pain and mental anguish on the part of James T. Nash, Jr., and that the trial court did not err in including such elements in the charge. In addition to the above referred to authorities see the following authorities: Coca Cola Bottling Co. of Ft. Worth v. McAlister, Tex.Civ. App., 256 S.W.2d 654; International & G. N. Ry. Co. v. Shuford, 36 Tex.Civ.App. 251, 81 S.W. 1189, wr. den.; Missouri K. & T. Ry. Co. of Texas v. Box, Tex.Civ. App., 93 S.W. 134, wr. ref.

█ We further hold that there was evidence of probative force of reasonably probable loss of services and contributions by James T. Nash, Jr., to James T. Nash, Sr., in the future and that there was evidence of probative force that it was reasonably probable that James T. Nash, Jr., would suffer future loss of earnings after minority and that the trial court did not err in including these elements in his

charge. See the following authorities: Dallas Consol. Electric St. Ry. Co. v. Motwiller, 101 Tex. 515, 109 S.W. 918; McIver v. Gloria, 140 Tex. 566, 169 S.W.2d 710; H. J. Heinz Co. v. Ashley, Tex.Civ.App., 291 S.W.2d 427; Groendyke Transport Co. v. Dye, Tex.Civ.App., 259 S.W.2d 747, dis. by agr.

In Dallas Consol. Electric St. Ry. Co. v. Motwiller, supra (109 S.W. 918, 921) it is stated:

"The question being whether or not there was any evidence authorizing the submission of the element of damage from impairment of capacity to earn money, its decision must depend upon the evidence in the case, in which the charge is given, and if there be *anything* in the evidence upon which the allowance of *any* sum, however small, can be properly made for such damage, the objection to the charge is met. * * * The law only exacts the kind of proof of which the fact to be proved is susceptible, but it does exact that. * * *

J"It appears that before she was hurt she could and did walk to and from her work, and that since her injuries she has been compelled to ride upon street cars. From their own general knowledge and experience the jury could say that this diminished to some extent the returns from her employment, and we think this evidence was as definite as should be required to show loss of earning power to the extent indicated by it. Evidence is adduced to put the jury in possession of facts from which *they* can determine the extent of impairment of earning power, and it is not intended in itself to establish a fixed measure of damages. When the jury are informed of such a fact as that just stated, they have enough to enable them to allow something upon that score." (Emphasis added.)

In H. J. Heinz Co. v. Ashley, supra (291 S.W.2d 427, 431) it is stated:

"*  *  * However, it is settled law that where plaintiff is seeking to recover for impairment of his earning capacity, 'A very exact computation or assessment of the sum to be allowed in any particular case is doubtless impossible, and hence the determination of the amount is deemed to be peculiarly within the discretion of the trier of facts. However, a verdict must be, not a mere conjecture, but an intelligent judgment, based upon proof of circumstances from which a conclusion is to be drawn.' 13 Tex.Jur. 193-194, paragraph 93.

"In McIver v. Gloria, 140 Tex. 566, 169 S.W.2d 710, 712, it was held that in a suit to recover for decreased earning capacity in the future, 'the amount which the plaintiff might have earned in the future is always uncertain, and must be left largely to he sound judgment and discretion of the jury. However, the verdict must be based on something more than mere conjecture. It must be an intelligent judgment, based upon such facts as are available.'

"In the same case the court held that where plaintiff is employed at a fixed wage or salary, the amount of his previous earnings ordinarily must be shown, and, 'If plaintiff's earning capacity is not totally destroyed, but only impaired, the extent of his loss can best be shown by comparing his actual earnings before and after his injury.' *  *  *"

In Groendyke Transport Co. v. Dye, supra (259 S.W.2d 747, 759) it is stated:

"Appellants charge that the awards of $7,187.50 and $5,000, respectively, to the respective parents, for the pecuniary benefits which would with reasonable probability have been received after reaching their majority from Chester Dye and Rogene Jones, respectively, had they lived, were each without support in the record and were each excessive. *  *  * In the case of McIver v. Gloria, 140 Tex. 566, 169 S.W.2d 710, it was held that future earnings are always uncertain and must be left largely to the sound judgment and discretion of the jury. No general rule can be established other than each case must be judged upon its own peculiar facts and the damages proved with that degree of certainty with which the case is susceptible. The verdict must be based upon such facts as are available and upon something more than conjecture. The evidence reveals that Chester and Rogene were both obedient, loyal, faithful, industrious children both at home and at school where they were both good students. *  *  * In either event jurors in such cases are permitted to exercise their own discretion, based upon their own experience and common knowledge in arriving at such future earnings. It has been held in such a case that 'The jury is generally justified in finding the pecuniary damages at a higher figure than that which merely includes proven wages.' J. Weingarten [Inc.] v. Sanchez, Tex. Civ.App., 228 S.W.2d 303, 310. *  *  *

"We are not privileged to inquire into the functions of the minds of the jury or the processes of reasoning exercised by the members of the jury panel in arriving at the sums fixed by them. At prevailing prices the sums the jury fixed would not amount to very much per year over a period of years. *  *  * The record does not reflect any bias or prejudice on the part of the jury. On the contrary it appears that the jury endeavored to be fair and just according to the existing facts and circumstances presented. In our opinion the sums awarded, about which appellants here complain, had sufficient support in the evidence and were not excessive. *  *  *"

We hold that appellant's third, fourth and fifth points do not present error under

this record and same are respectfully overruled.

Appellant's remaining points have been carefully examined, none of them are deemed as presenting reversible error under this record and the same are respectfully overruled.

Finding no reversible error in the record, the judgment of the trial court is affirmed.

Affirmed.