**CITY OF AUSTIN, Appellant,**

v.

**Clyde Weber CROOKS, Appellee.**

**No. 10847.**

Court of Civil Appeals of Texas.

Austin.

Feb. 1, 1961.

Rehearing Denied Feb. 22, 1961.

Doren R. Eskew, City Atty., C. J. Taylor, Jr., First Asst. City Atty., Thomas R. Hunter, Asst. City Atty., Austin, for appellant.

Taylor & Tyler, Kerns B. Taylor, Austin, for appellee.

ARCHER, Chief Justice.

This is a Workmen's Compensation suit brought by appellee ·against the City of Austin, appellant as a self-insured under Article 8309e, Vernon's Annotated Civil Statutes. Trial was before a jury in the 53rd District Court of Travis County, Texas, and appellee recovered an award and judgment for total and permanent disability alleged to have been caused by a dog bite while appellee was employed by the City of Austin, Texas. The trial court entered its judgment for total and permanent disability awarding appellee $35 per week for 401 weeks of Workmen's Compensation instead of awarding compensation at $25 per week as provided for by Article 8309e, Vernon's Annotated Civil Statutes.

This appeal is founded on ten points assigned as error and are that the Court erred in holding that the proper rate of compensation was $35 per week instead of $25 per week, and in not sustaining appellant's special exceptions to appellee's first amended petition because the Workmen's Compensation laws place a maximum recovery of $25 per week; in submitting special Issue No. 3 over the objection of appellant and in rendering judgment on the answers of the jury because there was no pleading or evidence or any sufficient evidence to support the issue; because Issue No. 3 submitted two distinct questions of fact, one of disability and one of treatment; in submitting special Issue No. 4 because such issue submitted two distinct issues of fact, one of disability and one of treatment; in rendering judgment on the answers of the jury to Issue No. 5 because there was no evidence to support the finding that disability was total, such finding being contrary to and against the overwhelming preponderance of the evidence, and finally in rendering judgment on the answers of the jury to Issue No. 6 because there was no evidence to support the finding of total disability, such finding being contrary to and against the overwhelming preponderance of the evidence.

Appellee, an employee of appellant, secured a jury verdict and a judgment for total and permanent disability alleged to have been caused by being bitten by a dog on October 6, 1959 and was given a tetanus antitoxin shot the same day, a reaction to the shot was developed and a drug was given to counteract the effect of such reaction. Appellee was hospitalized October 18, 1959 and released November 4, 1959 to return to work on November 23, 1959 and worked until December 2, 1959 when he was discharged.

Workmen's Compensation payments from October 9, 1959 to December 3, 1959 at the rate of $25 per week were made, as well as $144 for doctor bills and $324.85 for hospital bills.

It is apparent that the only issues in this appeal are the compensation rate, the sufficiency of the pleading whether the issues submitted were duplicitous, whether the jury finding of total and permanent disability was against the overwhelming preponderance of the evidence.

We do not believe that the Court erred in holding that the $35 wage rate rather than the $25 rate was applicable to city employees under the provisions of Articles 8309e and 8306, V.A.C.S.

In Western Casualty & Surety Company v. Young et al., 339 S.W.2d 277, application for writ of error pending, the Court of Civil Appeals at Beaumont held that the maximum death benefits payable under the Workmen's Compensation Statute relating to cities and city employees is $25 per week under Article 8309e, V.A.C.S.

We are not in accord with this holding.

We believe that the legislative intent in enacting amended sections 10 and 11 of Article 8306 to provide for a maximum recovery of $35 per week for total and partial incapacity was to provide for city employees the same compensation benefits as applied to all other employees under the Act and provide uniformity of the operation of the law.

In the preamble of the Act of 1953, Article 8309e, it is set out:

"Whereas, H.J.R. No. 20, Fifty-second Legislature, called for submission to the qualified electorate of the State of Texas, a Constitutional Amendment which would provide Workmen's Compensation Insurance to employees of cities, towns and villages; and Whereas, The said Constitutional Amendment was adopted by the qualified electorate of the State [of Texas] at the General Election held on November 4, 1952, by an overwhelming majority of 674,089 to 414,489; and Whereas, Employees of cities, towns and villages. work under similar conditions and are exposed to similar risks as employees of private enterprises and as employees of counties; and Whereas, Employees of cities, towns and villages do not now receive the benefits of the Workmen's Compensation Law as provided for employees of private enterprises and as provided for employees of counties; and Whereas, It is the intention of this Act to secure for the employees of cities, towns and villages Workmen's Compensation Insurance and the benefits of the Workmen's Compensation Act; now, therefore, etc. * * *."

We construe the amendment providing for the $35 weekly rate so as to cause a uniformity in the operation of the laws and reasonable classification.

82 C.J.S. Statutes § 154b, p. 261.

■ The Workmen's Compensation Act should be liberally construed.

Consolidated Cas. Ins. Co. v. Baker, Tex. Civ.App., 297 S.W.2d 706, er. ref. N.R.E.; Superior Ins. Co. v. Kling, Tex.Civ.App., 321 S.W.2d 151, affirmed Supreme Court, 327 S.W.2d 422.

Section 8 of chapter 397, Acts of 1957, 55th Leg. providing for the $35 rate of payment reads:

"The fact that injured employees are compensated on a grossly inadequate basis at the present time * * * create an emergency and an imperative public necessity * * *."

The Court submitted Special Issue No. 3 reading as follows:

"Do you find from a preponderance of the evidence that Clyde Weber Crooks suffered physical disability, if any, as a result of said injury, if any, and the treatment, if any, administered to him therefor?

"Answer 'Yes' or 'No.'

"Answer: Yes."

The Court submitted Special Issues Nos. 5 and 6 as follows:

"Do you find from a preponderance of the evidence that Clyde Weber Crooks' physical disability, if any, caused by said injury, if any, is total?

"Answer 'Yes' or 'No.'

"Answer: Yes."

"Do you find from a preponderance of the evidence that such total disability, if any, of Clyde Weber Crooks is permanent?

"Answer 'Yes' or 'No'.

"Answer: Yes."

The appellant objected and excepted to the submission of Issue No. 3 because there was no evidence and the evidence was insufficient to support the same and that there was no proper pleading that the issue is duplicitous in that it submitted two distinct issues of fact, one of disability resulting from an injury and one of fact of disability resulting from treatment, and that treatment not being an ultimate issue in the case.

We believe that the verdict of the jury finds reasonable support in the evidence, indulging every legitimate inference in favor of the findings. There was the testi-

mony of appellee, his wife and daughter concerning appellee's condition, suffering incapacity and inability to get and maintain employment.

Appellee testified as to being bitten by a dog and of the treatment at the doctor's office, the shots and the swelling of his arm and of his admittance to the hospital where he remained for four days and returned to the hospital one day later and upon readmittance stayed in the hospital until November 4th; that he continued visits to and treatment by the doctor; that he returned to work and was discharged on December 2nd. The witness testified to swelling in his stomach, knees and ankles caused by serum sickness and that he went to several doctors and finally to Dr. Ravel and that he had been under Dr. Ravel's care since December; that he had tried to get employment from various places but was unsuccessful. Mr. Crooks testified that Dr. Dildy advised him that he could never take any similar shots to those previously given, that his condition was unusual and that he carried tags and cards showing his allergies.

On cross examination the witness testified that he was sent to Dr. Dildy, a physician employed by the City, and as to use of hypodermic needles, and being told by Dr. Bain, a physician officing with Dr. Dildy, that he was allergic to antitoxin, lockjaw and horse serum; that the serum was administered in three doses. The witness testified that prior to the bite injury and injectives of the serum he was in good health and had held employment with various concerns in Austin and had a health card.

Dr. Ravel testified as to treatment of Mr. Crooks beginning on December 16, 1959, and restated the history of Mr. Crooks' complaints; that appellee did not respond to injection of hydrocortisone given until January 5, 1960, and continued to complain of pain in his left knee and to limp which continued, and complained of pain in the right shoulder and elbow. The doctor considered that the patient had serum sickness as a result of tetanus antitoxin administration and was having joint difficulty. The doctor testified that the patient has been completely disabled since the onset of the serum sickness and a further period of difficulty of an undeterminate duration may be anticipated.

Continued treatment through January, February and March, during which time Mr. Crooks complained of heart consciousness, shortness of breath, rapid and irregular heartbeat, rash appearing in February, and further treatment of cortisone drugs was given.

In April analgesics were given for pain; headaches then persisted and further complaints of chest pain and shortness of breath were made. Hives recurred in May and various antihistamines to control the itching and hives were given. In June he was again complaining of shortness of breath, sweating and weakness.

Dr. Ravel's final diagnosis was:

" * * * serum sickness, secondary to tetanus antitoxin reaction. Second, psychanalysis, mixed type, anxiety, and hysteria severe. Comment: Patient has continued to be incapacitated since the episode of serum sickness that had its onset on October 6, 1959. It is considered that his specific disability is on the basis of mixed type of psychoneurosis and permanent disability may result to the patient."

Dr. Dildy, called by the defendant, testified as to treatment given Mr. Crooks and observed his general condition and on October 18, 1959 he had the patient hospitalized and kept him there until October 21, 1959, when he was discharged, and on being advised that the patient was having considerable difficulty with his skin, he rehospitalized Mr. Crooks and kept him until November 4, 1959; that the patient came to his office on November 6th complaining of headache and was given treatment and that he did not note any swelling; that

the pulse and heart actions were normal; that Mr. Crooks returned to his office on November 16th complaining of lots of pain in his joints and that the patient was limping; that the patient was released for work on November 23rd.

The doctor testified that he did not think Mr. Crooks had any permanent disability resulting from the shots given as a result of the dog bite.

 The issue of the plaintiff's injury and the permanency thereof was in sharp dispute and was for the jury's determination as to the weight to be given evidence and to reconcile conflicts. Then too a plaintiff may make out his case as to disability without benefit of medical testimony.

Texas Employers' Ins. Ass'n v. Price, Tex.Civ.App., 336 S.W.2d 304; Zurich Ins. Co. v. Graham, Tex.Civ.App., 335 S.W.2d 673; Verhalen v. Nash, Tex.Civ.App., 330 S.W.2d 676, er. ref., N.R.E.

Appellant contends that special Issue No. 3 as submitted is duplicitous and combines the fact of bite and treatment and that separate issues should have been submitted.

The Court did not err in submitting this issue. The evidence is undisputed and uncontroverted as to the fact of appellee's dog bite, the fact of appellee's treatment necessarily given by appellant's physician, the resulting horse serum reaction, treatment and disability. The only question is the extent of the disability thereafter and whether such disability was temporary or permanent.

We do not believe that the issue is duplicitous, but even if so, was not harmful to appellant. An issue is not duplicitous by reason of the inclusion of uncontroverted facts where such is necessarily included in presenting the issue. The question of the bite was not disputed, and combining it with the element of disability from treatment would not render the issue duplicitous, but is permissible.

41-B Tex.Jur. 589-298, Trial—Civil Cases; Matson v. Texas Employers' Ins. Ass'n, Tex., 331 S.W.2d 907; Wooten v. Crosby County, Tex.Civ.App., 219 S.W.2d 553, er. ref.

The judgment of the Trial Court is affirmed.

Affirmed.